Hall *v.* Erwin.

[Fourth Department, General Term, at Rochester, September 4, 1871. *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.]

## Hall *vs.* Erwin and others.

The plaintiff, on being applied to by W. to purchase a bond and mortgage given to W. by the defendant, declined purchasing, but agreed to take the same to sell, as a broker for the mortgagee, for a compensation agreed upon. The securities were thereupon assigned to him, by W., to enable him to negotiate and transfer a title to a purchaser, and for no other purpose, except that out of the avails of the sale he should retain enough to pay and satisfy a judgment he held against W., and release a levy. But after having obtained the assignment, he refused to sell and assign the bond and mortgage, but claimed to retain the same as his own property, without paying W. anything, and refused even to satisfy the judgment, or to release the levy.

*Held*, 1. That the plaintiff had obtained no title to the securities which he could enforce against the mortgagor; and that in an action of foreclosure brought by him, the mortgagor could set up as a defense that he had paid the mortgage debt to the mortgagee, and taken a discharge from him.

2. That the plaintiff had acquired no right to, or equity in, the bond and mortgage, even to the extent of his judgment, which must be deemed to be satisfied by the levy, while the levy remained.

Fraud avoids all contracts, and transfers of title, into which it enters, at the election of the party defrauded.

*Ex dolo malo non oritur actio* is a maxim of very wide, if not universal, application. It applies even to the holder of commercial paper, and more strongly to assignees of choses in action.

APPEAL, by the defendant, from a judgment entered at a special term, upon a trial before a justice of this court, without a jury. The action was brought for the foreclosure of a mortgage.

The complaint alleged, that on the 28th day of August, 1869, the appellant, William Erwin, executed and delivered to Jabez R. Ward his bond, dated on that day, for the payment to said Ward, in one year, of $2200 and interest thereon; that on the same day the appellant and his wife executed and delivered to said Ward, a mortgage upon a farm in Steuben county, to secure the payment of said bond; and that on the 8th day of November, 1869, Ward assigned said bond and mortgage to the plaintiff. The complaint also contained the other usual allegations, and prayer for relief, in a complaint for the foreclosure of a mortgage. The answer was in three parts:

*First.* Denied that said bond and mortgage were ever assigned to the plaintiff, and denied that he is or ever was the owner thereof.

*Second.* Admits that Ward made and handed to the plaintiff the assignment set out in the complaint, and alleges that said assignment was never delivered to the plaintiff, absolutely or unconditionally, but was so handed to him, only for the purpose of enabling him to negotiate in his own name, a sale of said bond and mortgage to some third person, he, the plaintiff, expressly stating that he would not purchase said bond and mortgage himself, but that he could better and more surely negotiate them in his own name, than in any other way; that Ward agreed to allow the plaintiff $125 for effecting such sale; that the plaintiff also agreed, in case he could effect such sale, that after deducting from the avails thereof said sum of $125, for his services, and the amount unpaid upon a certain judgment in favor of the plaintiff and Lewis M. Smith, against Ward, which unpaid amount was a little more than $700, he would pay the balance in cash to Ward, and not pay or

apply it upon a note for $2500 made by Ward, and then held by the plaintiff; that he did not effect such sale, but at once assumed to own said bond and mortgage himself, and refused to satisfy said judgment, or pay Ward any money, until the latter should first pay said note; that Ward never ratified the plaintiff's claim to own said bond and mortgage; that the plaintiff never obtained said bond and mortgage otherwise than as above stated, and obtained the same fraudulently, and his claim to own them is false, fraudulent and void, by reason of the matters aforesaid.

*Third.* Alleges that the appellant paid to Ward, November 11, 1869, the full amount owing on said bond and mortgage, and at the same time Ward executed and delivered to the appellant a satisfaction of said mortgage, and the same was duly recorded on that day; and that on that day Ward was the owner of said bond and mortgage.

The plaintiff's reply denied the counter-claim, and each and every allegation tending to establish a counter-claim.

The court found as facts, that all of the allegations in the complaint were true; that none of the defendants were infants or absentees, and that the amount due to the plaintiff upon the said bond and mortgage, for principal and interest, was $2412.92. And as a conclusion of law, the court decided that the plaintiff was entitled to judgment for the relief demanded in the complaint as therein claimed, with costs, and judgment was ordered accordingly. And it was further ordered that the mortgaged premises described in the complaint be sold by a referee appointed for that purpose.

*King & Davidson*, for the appellant.

I. The plaintiff received the bond and mortgage only as an express trustee, viz., to negotiate a sale of them to some third person, and the assignment was handed to him, at his request, only to enable him more easily and certainly to effect that purpose. In case he could find a purchaser, he was to be a medium for transmitting Ward's title and

interest; but until he found such purchaser and transmitted the title to him, the bond and mortgage were as absolutely Ward's as they ever had been. Trusts may be created and proved by parol. (*Hill on Trustees*, 55–62. 2 *Pars. on Cont.* 67. 2 *Wait's Law and Prac.* 456, 457.) The fact that Ward was in debt to the plaintiff, did not lessen, nor qualify; the latter's obligation in the least; but he was bound to discharge his trust with the same strictness and fidelity as if Ward were not his debtor.

II. The plaintiff deliberately violated his trust by treating the assignment as absolute, and assuming to own the bond and mortgage. 1. It was a part of the understanding and agreement upon which the assignment was handed to the plaintiff, that he would not himself purchase the bond and mortgage. 2. The plaintiff took this course for the express purpose of defeating the object for which this trust was reposed in him. He had asked Ward to assign to him the bond and mortgage, and let him apply them upon the $2500 note, and Ward had told him he could not do this, but asked him to buy the bond and mortgage at a discount of $100, satisfy the judgment, and let him have the balance to meet a pressing obligation elsewhere; the plaintiff then said he would not buy the bond and mortgage himself, but he thought he could induce a third party to purchase them, and he could do so better in his own name than otherwise; that if Ward would allow him $125 for his services, if successful, he would try to sell the bond and mortgage for him; and to enable him to do this in the manner he had stated, asked for and received the assignment. He and Ward had also agreed that if the bond and mortgage were so sold, the judgment should be paid out of the proceeds. Having obtained the assignment upon such representations and agreements, he sent it, on the same day, for record, assumed to own the bond and mortgage, refused to satisfy the judgment, and insisted that Ward should be content with the application of $2075

Hall v. Erwin.

upon the $2500 note, or the judgment just entered up upon that note. He not only violated his trust, but he insisted that Ward should pay him, for so doing, the sum of $125; for he had previously offered to take the bond and mortgage and apply them upon the note; and he now insists that he bought the bond and mortgage of Ward for $2075, and wishes to apply that sum upon the judgment on the $2500 note. 3. The plaintiff claims to have bought the mortgage in November, 1869, but it is remarkable that he has never made any payment therefor, nor any application of the alleged purchase price, $2075, although he swears he desires to apply it upon the judgment on the $2500 note. Why has he not made such an application, or sought, in some legal way, to have it made, unless it be that he fears that, after all, his pretended claim to have bought the bond and mortgage may not be upheld by the court? 4. The plaintiff did not purchase the bond and mortgage when he received the assignment; it was handed to him about 11 A. M., November 8. After this was done, he directed judgment to be entered up upon the note. The judgment was entered up at precisely noon, November 8. The plaintiff testified in his affidavit that after the entry of that judgment he bought the bond and mortgage. The plaintiff did not see Ward after the latter handed him the assignment, in the morning of November 8, until the next day, but on that day he sent the assignment for record. By his own statements, it thus appears that the plaintiff accepted the assignment as a trust, and afterwards violated that trust; and he now claims that such conduct shall receive the sanction of the court.

III. The plaintiff obtained possession of the bond, mortgage and assignment by false and fraudulent representations, and therefore acquired no right to them. He not only violated his trust, but he intended to do so from the first. 1. He assumed to own the bond and mortgage on the same day that the assignment was handed to him, and

without any serious effort to sell them.    2.  He represented that he would not buy the bond and mortgage himself, and afterwards, on the same day, claimed to have bought them. 3.  He took the assignment under an agreement that if he could effect a sale of the bond and mortgage, he would satisfy the first judgment out of the avails; this he refused and refuses to do.    The plaintiff's whole claim began in a fraudulent intent on his part, and rests only in his dishonest acts, and is therefore void.  "Fraud avoids every contract, and annuls every transaction."    (2 *Pars. on Contracts*, 265.    *Peabody* v. *Fenton*, 3 *Barb. Ch.* 451, 462, 463.) Ward never ratified the plaintiff's claim.

IV.  The plaintiff never became, in any sense, the owner of the bond and mortgage.  He did not even make a formal sale of them to himself; he took them as Ward's, by his own admission, and directly afterwards began to call them his own, and has ever since kept up this unfounded claim.  His acts in having the assignment recorded, did not give him the legal title; it was only one mode of asserting his claim.  He received the assignment, as has been shown, upon the express understanding that it should be inoperative, unless he could find a third person who would buy the bond and mortgage; and he has done nothing to obtain any title which he did not at first obtain.  His assertions that he has bought the mortgage, and that he owns them, are entirely unsupported, and cannot of themselves give him any title.  (*Peabody* v. *Fenton*, 3 *Barb. Ch.* 451, 465.)

V.  The paper signed by Ward, was only to be used by the plaintiff in negotiating a sale of the bond and mortgage to some third person.    It was handed to the plaintiff, as was the assignment, in full reliance by Ward upon the plaintiff's statement that he would not purchase the bond and mortgage himself, but could and would induce some third person to buy them.    The use which the plaintiff made of it, shows that he obtained it as he did the assign-

ment, by fraud, and with intent to cheat Ward. If it were true that the offer contained in this paper, that Ward would " sell said bond and mortgage to F. G. Hall, (plaintiff,) for twenty hundred seventy-five dollars," was intended as an offer to the plaintiff, and not for the other purpose already stated, how has the plaintiff entitled himself to any rights under such offer ? He has paid nothing to Ward, and he has applied nothing to or upon either of Ward's debts to him. He has waited, and is still waiting until he can obtain, if possible, a ratification of his pretended purchase, before he will make any application of the purchase money.

VI. Before Ward executed and delivered to the appellant the satisfaction of the bond and mortgage, he could have compelled the plaintiff to reassign them to himself, upon the ground that his claim of ownership was false and void, or upon the ground that while acting as a trustee, he had assumed to sell to himself the subject matter of his trust. It is a well settled rule, that sales made to themselves by trustees or agents, as such, are void. (*Hill on Trustees*, 535, *to* 537. *Dunlap's Paley's Agency*, 33 *to* 36. 1 *Pars. on Contracts*, 74, 75. *Case* v. *Carroll*, 35 *N.Y.* 385, 388, 389.) This right of Ward passed from him to the appellant, by the transaction between them, November 11, when the appellant paid Ward the full amount owing upon the bond and mortgage, and the latter executed and delivered the satisfaction. Ward then no longer possessed this right of action against the plaintiff, but conveyed it to the appellant as the consideration for the payment made by the latter. Although the satisfaction piece is not in the usual form of an assignment, yet in this case it had the same effect as an assignment of the bond and mortgage to the mortgagor would have had ; the latter, equally with the former, would have extinguished the bond and mortgage. (*Moore* v. *Hamilton*, 48 *Barb.* 120, 123.) The satisfaction piece is unquestionable

Hall *v*. Erwin.

evidence of the real transaction between Ward and the appellant; which was, in intention and effect, to place the latter in the former's place. Ward received all that, in any event, he could claim from his mortgagor, and for the latter's benefit, divested himself of all interest in the bond and mortgage; and the appellant paid Ward fully for parting with such interest. It cannot be assumed that the appellant or Ward intended that the former should pay the debt, without being placed in the best possible position to defend an action such as the plaintiff has brought; and the acts that they did, Ward's full statement of his transactions with the plaintiff, the appellant's payment of the debt in full, and Ward's satisfaction, are sufficient evidence that Ward transferred to the appellant all his rights of action against the plaintiff. A conveyance by a mortgagee, as upon a statute foreclosure, if the proceedings were irregular, operates as a good assignment of the mortgage. (*Jackson* v. *Bowen*, 7 *Cowen*, 13.) The purchaser at a mortgage sale, under an attempted statutory foreclosure, void as against the mortgagor, for want of notice, stands as an assignee of the mortgage. (*Robinson* v. *Ryan*, 25 *N. Y.* 320, 324, 325.)

VII. The justice who tried the cause erred in finding that the bond and mortgage were assigned, or transferred, or set over to the plaintiff by Ward. As we have already seen, the delivery of the assignment was not absolute, but conditional, and the conditions upon which, only, such assignment was to have any effect, have never been performed. The plaintiff obtained the assignment by false and fraudulent representations, and assumed to appropriate it to himself, in violation of an expressed trust. The justice also erred in finding that Ward delivered said assignment to the plaintiff, for the reasons just stated. The justice erred in finding that the plaintiff ever became, or is, the holder or owner of said bond and mortgage. The plaintiff never obtained an apparent title to the bond

Hall *v.* Erwin.

and mortgage, except by his own fraud, and has never paid for them; his title is therefore void in law and equity. The justice erred in finding that any sum was due to the plaintiff upon the bond and mortgage. The grounds of exception to this finding are included in what has just been said. The decision that the plaintiff was entitled to the relief demanded in the complaint, is contrary to law and justice. It was fully proved that the plaintiff was never the rightful holder or owner of the bond and mortgage, and that the mortgagor—the appellant—had fully paid the debt to the mortgagee who was at the time entitled to the same, and was entitled to all the rights which the latter had previously had against the plaintiff.

VIII. The findings of fact, in the decision of this case, are stated in the most brief and general manner possible. With respect to the matters litigated, the only finding is in these words: "That all of the allegations in the complaint in this action are true." Upon the settlement of the case, the justice was requested to find several facts, all of which are embraced in and constitute the main portion of the defense set up in the answer, and all of which were fully proved upon the trial. In his own words, "the judge declined to find otherwise than as theretofore found by him, on the ground that the matters involved in those requests are immaterial as between the parties to this action." To this ruling the defendant's counsel duly excepted.

The grounds upon which the justice treated "the matters involved in those requests" as immaterial, are stated by himself, in his opinion. They are these: 1st. The terms of the assignment. 2d. The terms of the written statement from Ward to the plaintiff, dated November 8, 1869. 3d. "The object of the transfer, as claimed on the part of the defendant, which was to enable the plaintiff to find a purchaser of the mortgage, by offering to sell it as his own." It is only necessary here to consider the last

of these three grounds, as the others have been fully discussed. The object of the transaction between the mortgagee, Ward, and the plaintiff, was plainly expressed and understood, and it was two-fold : 1st. To enable the plaintiff to find a purchaser of the mortgage, other than himself, by offering to sell it as his own. 2d. To enable Ward to pay the judgment upon which execution was issued and levied upon his property, and place the balance of the avails in Ward's hands, to be used by him in paying a fiduciary debt. Both of these objects the plaintiff sought to defeat, from the moment when the assignment was in his hands. It cannot justly be claimed, that because he was Ward's creditor, he might safely violate a trust reposed in him by Ward ; but no other fact in the case furnishes the slightest excuse for his conduct.

To that portion of the opinion in which the justice holds that whatever equities Ward might have are not available to the defendant, there are two answers : 1st. The plaintiff did not acquire even the legal title to the bond and mortgage, and therefore cannot maintain this action. 2d. The appellant, when he paid the bond and mortgage to Ward, took from him his rights of action against the plaintiff.

IX. The appellant claims this : 1st. That no title passed to the plaintiff. 2d. If a title did pass, voidable at Ward's election, the appellant, by paying the mortgage to Ward and taking a satisfaction piece, has become the assignee of all his rights and equities.

*E. H. Benn*, for the respondent.

I. The answer sets up no defense, and no evidence was necessary. Whether Ward would have had a defense, or whatever remedy he had, or has, against Hall upon the facts as Erwin alleges them in his answer, is not in this case a material question. If he has been defrauded, it is his business, and not Erwin's. Erwin owes the bond and

Hall *v.* Erwin.

mortgage, and it makes no difference to him whether he pays it to Ward or to Ward's assignee. He cannot make a defense for Ward. If the assignment had been procured by fraud, it would not be void, but only voidable. (12 *Abb.* 275, 277.  7 *N. Y.* 226, 227.  9 *id.* 150.  29 *Barb.* 404 *to* 407.  10 *Bosw.* 648.  2 *Pars. on Contracts,* 279.) Ward would be the only person who could insist upon treating it as void. Even a surety cannot set up such a defense for a principal, nor even set up a counter-claim, which the principal may have. (*Lewis* v. *McMillen,* 41 *Barb.* 420, 431, 432.  *Gillespie* v. *Torrance,* 25 *N. Y.* 306.)

II. It seems idle to discuss the question of fraud in this case, as there is no fraud in the case at all. The pleadings and evidence show that Ward assigned the bond and mortgage to Hall with the intention and for the purpose of passing the title to him; and if Hall had assigned to anybody else, that person would have got the title from Hall, and Hall could have sold for more or less than $2200. All that Ward could claim of Hall was $2075, the amount he sold to Hall for. It was of no consequence to Ward whether he sold it again or kept it himself. He was and is liable to pay Ward $2075, and don't dispute it. That was his agreement. All that it amounts to is that Hall neglects or refuses to pay a debt that he acknowledges he owes, and has promised to pay. That is not fraud.  (26 *Barb.* 616.  40 *id.* 516, 519.)  There is no doubt about Hall's responsibility, and Ward can recover it by action. It would have been the same if Hall had sold the bond and mortgage to some one else, and got the money. All Ward could do would be to sue him. Hall would simply have owed Ward the $2075 he agreed to pay for the bond and mortgage, and he admits that he owes that now.

It would be absurd to talk of fraud, even if Ward himself was defending. Besides, it is not true that Hall agreed to sell it to somebody else. At first, as Ward

swears, the plaintiff refused to buy the bond and mortgage himself, but said he would try and get some one to buy it, and finally said that Ward might execute an assignment and bring it in, but that he could not say then whether he could take it or not; and the plaintiff himself swears that at first he declined to take it himself, but afterwards, after examining the property, he concluded to take it himself; and there is no proof that there ever was any agreement or understanding that the bond or mortgage or assignment were ever, on any conditions, to be returned to Ward, or that Hall was to reassign to Ward, or that Ward was to have anything from Hall but the purchase price, $2075, which Hall agreed to pay, and which Ward demanded almost immediately after the assignment was executed. There is nothing resembling fraud in the case.

III. The law and the facts being as above stated, the plaintiff was absolutely entitled to judgment, and the court could not legally have decided otherwise. And that being so, the defendant's requests to the judge, on the settlement of the case, to find on divers propositions, are all immaterial, because upon the case as made, no facts could legally be found that would entitle the defendant to judgment. It would be a sufficient objection to them all, that they are requests to find abstract propositions, statements of evidence, and unwarranted legal conclusions, entirely out of place in the case. The judge properly decides that the matters involved in the requests, except so far as he has already found, are immaterial as between these parties. He had already found that Ward had assigned and transferred the bond and mortgage to the plaintiff; that the plaintiff was the lawful owner of the same, and that there was due and unpaid from the mortgagor to the plaintiff, thereon, $2200, and interest from August 28th, 1869, and that the plaintiff was entitled to judgment therefor, and to those findings the defendant's counsel had excepted. On these questions the court had

Hall *v.* Erwin.

not refused to find, and having found these facts to be so, there was nothing else in those requests material, as between the parties to this suit. It is not conceded that the court, at the time of settling the case, could be required to find on such a group of propositions, even if some of them were material in the case, (24 *How. Pr.* 183;) or that the general exception to a refusal to find them all would be good for anything. (50 *Barb.* 407. 35 *How.* 416. 18 *N. Y.* 558.) But it is not necessary to consider that question; for, as between the plaintiff and the defendant Erwin, all the questions, except those expressly decided, were immaterial.

*By the Court,* JOHNSON, J. The action is to foreclose a mortgage given by the defendant to Jabez R. Ward. The plaintiff claims to be the owner of the mortgage, by virtue of an assignment from Ward, the mortgagee.

The defense is, in substance, that the plaintiff is not the owner of the mortgage, and never acquired any title thereto, by virtue of his pretended assignment, and that the defendant has paid the mortgage debt in full to the mortgagee, who was the real owner, and who has duly satisfied and discharged the same. There is no dispute about the facts of the case.

The testimony of Ward, the mortgagee, and of the plaintiff, agrees in all substantial and material respects. There is no question in the case as to the admissibility of evidence, except in regard to a single item of evidence which is entirely immaterial. The naked question is presented, upon the undisputed facts, whether the plaintiff obtained any title to the bond and mortgage in question, which he can enforce against the mortgagor, who has paid the same to the mortgagee, and taken a full discharge. That the plaintiff had the apparent title cannot be disputed. Nor is there any doubt that the defendant paid the mortgage with full notice, and knowledge of the

plaintiff's claim to be the assignee and owner. He knew all the facts as they now appear in evidence. Whoever was the lawful owner of the bond and mortgage, was the defendant's creditor, and to him the debt was owing, and could not be discharged by payment to another. When the defendant, therefore, acting upon the notice he had, elected to pay the debt to the mortgagee, he assumed the risk of proving that such mortgagee was in fact and in law his creditor, who had the legal right to demand and receive payment as against the apparent assignee and owner. The defendant has unquestionably the right to show, if he can, that he has paid the debt to one who owned it, and had the clear right to receive payment. We come, then, to the question of the plaintiff's title. How did he acquire it? Is he a purchaser, and if so, when did he become a purchaser? Apparently, and upon the face of the paper merely, he is assignee and purchaser for a valuable consideration. But what is the real fact? The testimony shows, clearly and beyond any dipute or cavil, that he refused to purchase the bond and mortgage when the mortgagee offered to sell them to him, and agreed to take them to sell as a broker for the mortgagee, for a compensation agreed upon, and that the assignment was given to him to enable him to negotiate and transfer a title to a purchaser, more conveniently and advantageously, and for no other purpose. By the agreement he became the agent or factor, or trustee, of the mortgagee, for a specific purpose, and the assignment was given to him not for the purpose of constituting him assignee and owner, but merely as an evidence of his authority and right to sell and transfer a title. The plaintiff was, at this time, a judgment creditor of the mortgagee, the balance due on his judgment being about $700. Execution had been issued and property levied upon sufficient to secure the debt. It was part of the agreement that, out of the avails of the sale of the bond and mortgage, the

Hall v. Erwin.

plaintiff should retain sufficient to satisfy this judgment, and release the levy, and then pay over the balance to the mortgagee, less his compensation. But the plaintiff, after having obtained his assignment in this manner, deliberately refused to sell and assign the bond and mortgage, but elected to keep the same as his own property and pay the mortgagee nothing. He refused even to satisfy the judgment on which the levy was made, and the levy yet stands as a satisfaction of that judgment. He did not even elect to become a purchaser, if he could have done so in view of his relation to the mortgagee. He elected to take it, himself, in defiance of his agreement, and in flagrant violation of his employment and trust.

There can be no doubt, upon the evidence, that the real relation of assignor and assignee, and the consequent relation of debtor and creditor, in reference to the bond and mortgage, was never contracted and never existed between the mortgagee and the plaintiff. It was not the subject of the negotiation and bargain between them. That was just the relation that the plaintiff refused to bargain for and to assume. The relation they did bargain for, and contract, by their agreement, was that of principal and broker, or factor, and nothing else. The plaintiff obtained his color of title by falsely pretending that he did not wish to become assignee and owner, but was willing to act as broker, for a consideration agreed upon, and by artful and deceitful promises which, at the time they were made, he confessedly never intended to perform. The plaintiff does not pretend that he ever intended to raise and pay over the money, and his whole course of conduct shows clearly that he did not. He obtained his formal assignment simply by false pretenses, specious promises, and false lights, held out to one under the most imminent stress of pecuniary needs and difficulties. The law does not confer titles, and give rights of action, through such means. To allow such a stroke of financier-

ing to succeed would be repugnant to every idea of justice, and shock the moral sense.

It is claimed in behalf of the plaintiff, that the defendant has no right to inquire into the particulars of the bargain between the plaintiff and the mortgagee. That inasmuch as the assignment in question was made with the intent, and for the express purpose, of having the title to the bond and mortgage transferred from the mortgagee, it is of no consequence to the defendant, whether the plaintiff has acted in good faith with the mortgagee, or not ; that the assignment is conclusive upon the defendant. This was the view which seems to have been taken at special term, as appears from the opinion of the learned justice before whom the action was tried. It was there held that whatever might be the rights and equities of the mortgagee against the plaintiff, they were not available to the defendant, who was not privy to the arrangement, and was in no way interested therein when it was made. But this argument proceeds rather upon form and color than substance. The rule is quite different when the assignee holds *mala fides. Ex dolo malo non oritur actio,* is a maxim of very wide, if not universal application. It applies even to the holder of commercial paper, and more strongly to assignees of choses in action. It has been held in the case of a negotiable note, that if the defendant can show that the plaintiff obtained it by his own fraudulent act, he has a right to defeat the action on that ground, although he may be liable to pay the note to the true owner. Oakley, J., in delivering the opinion in *Talman* v. *Gibson,* (1 *Hall,* 308,) says: " This proceeds on the general doctrine that no man can acquire a right by his own fraud, to sustain an action in any court; and it is a principle of universal application." (*City Bank of New Haven* v. *Perkins,* 29 *N. Y.* 554.) It is a question of title, and right of action, which a defendant may always controvert by way of defense. Fraud avoids all contracts, and transfers

of title, into which it enters, at the election of the party defrauded.　That the mortgagee here elected to repudiate the plaintiff's claim of title, and took measures to defeat it, of which the plaintiff had due notice, is undeniable.

It is said, however, that in any event the plaintiff, by the agreement, coupled with the formal assignment, acquired a right and equity in the bond and mortgage, to the extent of his judgment of $700, which he had the right to pay and satisfy out of the avails, when the securities should be negotiated and assigned.　But it is a fundamental rule of equity, not to recognize or protect any claim which is presented by unclean hands.　In addition to this, moreover, the evidence shows that after the plaintiff had made up his mind to keep the bond and mortgage, and set up title to it under his assignment, he refused to satisfy that judgment out of it, and forbade the sheriff to release his levy. He retains his levy contrary to the agreement, and the judgment must be deemed to be satisfied by the levy, while it remains.　It is too late for him now to fall back upon that right, which he has once so unjustly disclaimed and cast aside.　The whole case exhibits, most unmistakably, a deliberate plan and scheme on the part of the plaintiff, to obtain by artifice and deceit, a formal assignment of the bond and mortgage, and then to set up title and seek to hold them, in satisfaction of, or as a counterclaim to, another demand, which he had shortly before purchased against the mortgagee and a third person, and which he knew the mortgagee was unable and unwilling to pay in that way.　But the plaintiff has not attempted to apply the bond and mortgage, or the value thereof, in satisfaction of that claim even.　On the contrary, he has resisted such application, when sought to be enforced by the third person and party to the last indebtedness.　He has paid nothing on account of the bond and mortgage, to any one, and refuses to perform any part of the agreement on which he obtained possession and a formal transfer of

those instruments. It appears to me a very plain case, of a party attempting to obtain title and a right of action, through sheer deceit and fraud ; which the law will neither uphold nor tolerate. The court, at special term, erred, therefore, in holding that the plaintiff, by means of that transaction, had required a title to the bond and mortgage, and a right of action against the defendant.

The judgment must, therefore, be reversed, and judgment ordered for the defendant, for his costs of the action and the appeal.

[FOURTH DEPARTMENT, GENERAL TERM, at Rochester, September 4, 1871. *Mullin,* P. J., and *Johnson* and *Talcott,* Justices.]