# WHEELING.

ROLLINS AND ENTSMINGER *v.* MENAGER, TRUSTEE, *et als.*

Submitted January 24, 1883—Decided November 10, 1883.

1. When the privy examination, acknowledgment and declaration of a married woman shall have been taken in the manner pre-

scribed by ¿ 4 of ch. 73 of Code and recorded or certified, and the deed of trust, on which it is endorsed, conveying the real estate of a married woman shall have been duly admitted to record as to the husband as well as to the wife, such deed of trust operates to pass from her and her representatives all right, title and interest of every nature, which at the date of the deed of trust she may have in any real estate conveyed thereby, as effectually as if she were at the date of the deed of trust an unmarried woman; and it will so operate, though the deed of trust was given to secure a past debt of her husband or of some third person and there was no new consideration arising when the deed of trust was executed, provided it was in the usual form of a deed of trust. (p. 473.)

2. In such a case the *feme covert* will not be permitted by parol evidence to contradict the facts set out in the certificate of her privy examination, acknowledgment and declaration so as to avoid the effect of the deed of trust, unless she first establish by parol evidence satisfactorily, that with the concurrence of those claiming under the deed of trust the married woman has been defrauded or imposed upon by the pretended privy examination, acknowledgment and declaration. (p. 467.)

GREEN, JUDGE, furnishes the following statement of the case:

On March 1, 1880, A. W. Rollins, trustee, and Julia Ann Entsminger presented their bill of injunction to the judges of the circuit court of Mason county. The bill stated, that on June 17, 1871, Isaac Entsminger conveyed to A. W. Rollins, trustee, a certain mill and fifteen acres of land in said county for the use of his wife, said Julia Ann Entsminger. On January 23, 1879, her said husband executed to Clark Tillis his note for four hundred and sixty-two dollars payable one year after date with interest from date, to secure the payment of which he executed a deed of trust to James B. Menager, trustee, on the mill and fifteen acres of land and used his importunities to induce the plaintiff Julia Ann, his wife, to sign it also, and she did sign it by making her mark, but she did not sign it willingly but only because of the threats and menaces of her husband, and she so told the justice, who certified the acknowledgment, when she signed this deed. The acknowledgment is in the form required by law. The plaintiffs say, that the note secured by this deed of trust is not signed by her and was signed by her husband only. And

the plaintiffs allege, that the certificate of the justice to this deed is fraudulent and void; that she never did acknowledge this deed willingly, all of which was known to the *cestui que trust* in said deed, Clark Tillis; that the note or debt secured by the deed of trust was the note or debt of her husband and was a debt, which in no way concerned her or her trustee. The other allegations in this bill it is unnecessary to state, as they are unimportant in this cause. The prayer is, that an injunction may be awarded enjoining any sale of this property under this deed of trust, and that it may be canceled so far as the female plaintiff is concerned and for general relief. Her husband, James B. Menager, the trustee, in this deed of trust and Clark Tillis, the *cestui que trust*, are made defendants. This bill is sworn to by the trustee A. W. Rollins. The injunction prayed for was awarded, the penalty of the injunction-bond being fixed at fifty dollars.

On April 21, 1880, the defendants, James B. Menager, trustee, and Clark Tillis, filed their joint and separate answers. They admit the conveyance of this mill and fifteen acres of land to A. W. Rollins, trustee, for the use of the female plaintiff, as stated in the bill, admit the giving of the note for four hundred and sixty-two dollars and the execution of the deed of trust, and state that it was duly and legally acknowledged in the manner required by law. They deny in detail all the other allegations above stated in said bill and give the following statement of the facts, viz: that the sole consideration, for which said note was executed to said Tillis, was for money advanced by him to pay off and discharge another lien upon said mill and fifteen acres of land, being a deed of trust for the use of one C. W. Maupin, which note to Maupin was given for money advanced to pay off a note secured by a previous deed of trust executed by the husband of Julia Ann Entsminger, the female plaintiff, to secure a note to one Barritt; that this first deed of trust was executed when this mill and fifteen acres of land belonged to the husband of the female plaintiff before he conveyed it to Rollins for the use of the female plaintiff; and that this four hundred and sixty-two dollars was borrowed to prevent this mill and fifteen acres of land from being sold under this second deed of trust. This answer is sworn to by Clark Tillis.

The depositions taken in this cause prove, that. there was this previous deed of trust in favor of Maupin on this mill and fifteen acres of land; that the payment of this debt to Maupin being urged, Clark Tillis agreed to advance the requisite amount of money to pay it off; that one undivided half of this mill and fifteen acres of land was to be conveyed to him, Tillis; that, as the amount to be advanced, four hundred and sixty-two dollars, would exceed the one half of the estimated value of this mill and fifteen acres by somewhat over one hundred dollars, Isaac Entsminger, the husband of the female plaintiff, and his wife were to execute a deed of trust on the moiety, which would be still owned by the female plaintiff, to secure this one hundred dollars and upwards; that this mill and fifteen acres were thus to become the joint property of the female plaintiff and of the defendant Clark Tillis; that this money was advanced with this understanding, but with whom it was had is not shown in the evidence, but as it was done to save the property of the female plaintiff from sale it is reasonable to suppose it was done with her approbation. This seems to have been the case from her own statements in her deposition, for she says this money was advanced to pay this Maupin deed of trust, but she thought Clark Tillis, who advanced the money, was to be a partner with her husband in this mill; and she says she offered to sign a deed of trust on half the property to secure this advance. But for some reason not at all explained in the depositions, after the money was advanced, this arrangement, whereby Clarke Tillis was to become owner of half this property and to have a deed of trust on the other half to secure his advance, was broken up, and the husband of the female plaintiff and Clark Tillis agreed, that he should give his note for the money advanced, four hundred and sixty-two dollars, and that it should be payable in one year after date and be secured by a deed of trust upon this mill and fifteen acres of land. Accordingly this note for four hundred and sixty-two dollars was given by the husband of the female plaintiff to Clark Tillis on January 23, 1879; but she objected to this change in the original understanding and was very reluctant to sign a deed of trust conveying this mill and fifteen acres to secure this four hundred and sixty-two

dollars and interest. But she was advised to do so by her two sons, as she herself says. One of her sons states he gave her this advice; the other though examined says nothing on the subject, though he does not contradict her in any of these statements, being asked no questions in relation to her other statements. The other person present whom she calls her son was really her son by another husband. He corroborates his mother in none of her statements, except that he says "the justice asked her if she was willing to sign that deed of trust; her answer was as well as I recollect, 'yes,' and added to it afterwards 'not with a very clear conscience' or some words to that effect. I have been under the impression that Mr. Smith the justice did not hear it; that the latter part was in a lower tone of voice than when she first spoke. She stepped forward and signed it as she said this." He states also that he advised his mother to sign this deed of trust. It is true that a son-in-law of the female plaintiff was examined and stated, that when the justice was making the examination his mother-in-law said: "I will have to sign this deed but not with a clear conscience." He corroborated his mother-in-law in none of her other statements and said nothing about them. I will say however, from the examination of this witness and from the testimony of others I believe he knows nothing of this transaction and was not present, when it occurred. His mother and one of his brothers-in-law say he was present; but his other brother-in-law and the justice do not remember his being there at all. Clark Tillis corroborates her statement in one other respect. He says that "when the justice Mr. Smith came to the house to get the papers fixed up, Mrs. Entsminger refused to sign it, unless I would take the trust on half the land. I wouldn't agree to take that and started away, and some one called me and Mr. Smith back, and then she and her husband both said they were willing to give me a deed of trust for the money and did it. After this was agreed upon, I did not hear her make any objections." The magistrate Smith corroborates the female plaintiff in nothing. He says: "I asked her if she willingly executed the deed, and she declared to me she willingly executed the same." He further says "I explained to her fully the contents of the deed, and I think I further asked her all

the necessary questions, when the deed was acknowledged."
One of the sons of the female plaintiff says: "He, the justice, asked her if she understood the contents of the instrument of writing, she answered that she did. He proposed to read it to her, but she said it was not worth while; that she understood it. That is all this witness then recollected."

The weight of the evidence is, that whatever examination of the female plaintiff may have been made by the justice was made before or at the time she signed the deed and not afterwards; and one of the sons says that there was no privy examination. None of the witnesses corroborate the female plaintiff in saying, that Clark Tillis knew, that the female plaintiff signed this deed unwillingly. They say he was present, but those who say, she said she signed it but not with a good conscience, do not state, that Clark Tillis was in a position, which made it probable he heard this statement. The evidence is to a considerable extent contradictory, but from a careful consideration of it the conclusion I reach is, that the weight of the evidence establishes these facts. The statements of the witnesses are however often vague and unsatisfactory, and some of the facts stated are deductions drawn from putting together the statements of different witnesses and reconciling them as well as it can be done. On these pleadings and evidence the court on April 24, 1880, rendered the following decree:

"This day came the parties, by their counsel, and the motion heretofore made to dissolve the injunction awarded in this case being argued by counsel and considered by the court, is overruled, and the said injunction perpetuated. It is therefore adjudged, ordered and decreed that said motion be overruled, and that said injunction be and the same is perpetuated. And this cause now coming on to be heard upon the bill and its exhibits, and answer thereto of James B. Menager, trustee, and Clark Tillis, and plaintiffs' replication thereto, and the consent of the defendant, Isaac Entsminger, and the depositions for plaintiffs and defendants, taken and filed in the cause, and was argued by counsel for complainants and defendants. Upon consideration of all which the court is of opinion that the plaintiffs are entitled to the relief prayed for; and it appearing to the court from

the papers and evidence in the cause that no privy examina-
tion as to the deed of trust, a copy of which is filed with
complainants' bill as 'Exhibit B,' was ever had or made as
to said Julia Ann Entsminger, the court is of opinion that
said deed of trust ought to be canceled as to said Julia Ann
Entsminger. It is therefore adjudged, ordered and decreed
that said deed of trust be and the same is hereby canceled as
to said Julia Ann Entsminger. It is further adjudged,
ordered and decreed that the plaintiffs recover their costs
against said defendants by them in the prosecution of their
suit in this behalf expended, including a statute-fee of fifteen
dollars as allowed by law, and plaintiffs have leave to sue out
a common law execution therefor. And there being nothing
further to be done in this cause, the cause is hereby dismissed.
And the defendants desiring to appeal from the above decree,
the foregoing decree is suspended for the period of ninety
days, when the defendants, or some one for them, shall enter
into bond with good security in the penalty of seventy-five
dollars before the clerk of this court, conditioned as the law
requires."

From this decree James B. Menager, trustee, and Clark
Tillis have obtained an appeal and *supersedeas.*

*Tomlinson & Polsley* for appellants.

*Charles E. Hogg* for appellees.

GREEN, JUDGE:

The certificate of the justice of the privy examination of
the married woman, which is appended to the deed of trust
and recorded with it, is in due form. But it is alleged in the
bill and attempted to be proven by the depositions, that this
certificate is in point of fact false and fraudulent. On this
subject Tucker P. in *Harkins* v. *Forsyth et al.* 11 Leigh 301
says:

"By the common law a married woman could not by join-
ing her husband in a deed bar herself or those claiming un-
der her of her own estate. In process of time, however,
fines were adopted to this end, and by them the rights of the
wife might be successfully passed—5 Cruise's Dig. 115, 116.

But to prevent imposition upon her it was at length provided by a statute, that when a *feme covert* was one of the parties to a fine, she should be privily examined, and if she refused her assent, the fine should not be levied. *Ibid.* This proceeding is the prototype of our privy examination. But though the privy examination was positively enjoined by statute, yet if a *feme* was allowed to acknowledge a fine without examination, it nevertheless bound her, and could not be reversed; for she could not contradict the record which set forth her examination. *Ibid.* According to the British system of jurisprudence then, we see that certain safeguards were thrown around the *feme* for her protection; but we also see that if those safeguards failed, she was left without remedy, except in cases of fraud in the counsel whom equity would in such case consider as trustee for her.

"In Virginia as a substitute for the fine, a deed, accompanied by a privy examination of the *feme* has been adopted. This privy examination, it is provided, may be taken before a court of record, or before two justices of the peace. (In West Virginia before one.) In both cases the same identical requisitions exist. In both it is required that the deed be shown and explained to her, and that she shall acknowledge it as her act and deed and declare that she had willingly signed, sealed and delivered it. When this examination has been made in court, it must be conceded that it is altogether conclusive, and that no allegation can be admitted to contradict the entry upon record, however much that may be at variance with the real fact. Though the judge or justice who examined her may have disregarded every requisition of the statute, yet when the time is once ended, the truth of the record never can be questioned, but the examination must be taken to have been in truth what by the record it appears to have been. Thus then it would seem, that like our ancestors, we have, in *this* provision been content to throw around the *feme covert* a certain safeguard, which may nevertheless fail to fulfil the just and benevolent intention of the lawgiver. We have not indulged the vain expectation that we have provided against every possible mischief, since we know that perfection is not attainable in human legislation. But we rest upon the assurance that with these guards the rights

of married women are substantially secured, and there is much less danger of their suffering by the ignorance or corruption of the courts than there would be of shaking all confidence in the titles of the country, if *feme covert* were permitted at the remotest period, to call in question what has been solemnly recorded in a court of justice.

"The second mode of privy examination prescribed by law, is by two justices of the peace, (in West Virginia by one). And it seems to be supposed, that because it is a matter *in pais*, the certificate of the justices may be directly contradicted, and the deed vacated by the testimony of witnesses, and even by the depositions of the justices themselves. Such a position is at variance, I take it, with the spirit and object of the law, and also with the terms of the law itself."

After discussing the question at length the judge concludes:

"To me indeed it seems that the demon of mischief could not suggest a notion better calculated to throw all things in relation to titles, into their original chaos, than the establishment of the principle here contended for. *   *   *

"It remains but to qualify the foregoing remarks by observing, that notwithstanding the conclusiveness of the certificate at law the *feme* may be relieved in equity when it has been obtained by the fraud of the party claiming under the deed. Such was the law as to fines, and such must doubtless be the law in reference to this substitute for the fine. Nothing of that kind is pretended here; so that the deed I think stands unimpeached."

These principles have ever since this decision been recognized as law both in Virginia and in West Virginia. *First National Bank of Harrisburg* v. *Paul et als.* 75 Va. 601; *McMullin* v. *Eagan*, 21 West Va. 233. The decisions elsewhere accord with ours and it may be regarded as settled law, that between the immediate parties to a deed the acknowledgment of a married woman may be impeached for fraud, collusion or imposition; but if no such fraud, collusion or imposition be established, parol evidence can not be received to contradict the certificate. And when such fraud, collusion or imposition is attempted to be shown, the proofs,

to impeach the certificate, should be full and convincing. *Borland* v. *Walrath*, 33 Iowa 133 ; *Hourtienne* v. *Schnoor*, 33 Mich. 274 ; *Van Orman* v. *McGregor et al.*, 23 Iowa 300. It may also be regarded as well settled, that except in such cases of fraud and collusion, which is brought home to some party claiming under the deed, if the certificate is regular and complete, as in this case, no parol evidence will be received to contradict the facts set forth on the face of the certificate ; and on the other hand if the certificate fails to state any essential fact, the existence of it can not be proven by parol ; her acknowledgment cannot rest partly in parol and partly in writing—it must all be in writing. *Ennor* v. *Thompson*, 46 Ill. 215 ; *Williams* v. *Baker*, 71 Pa. St. 476 ; *Ridgely* v. *Howard*, 3 Harr. & McH. 321 ; *Leckman* v. *Harding*, 65 Ill. 505 ; *Montgomery* v. *Hobson*, Meigs (Tenn. 19) 437 ; *Kerr* v. *Russell*, 69 Ill. 666 ; *Westbrooks* v. *Jeffers*, 33 Texas 86 ; *Hays* v. *Hays*, 5 Rich. (S. C.) L. R. 31 ; *Barnett* v. *Barnett*, 15 Serg. & R. 72.

Applying this law to the case before us can the female plaintiff be relieved in equity, because the deed of trust was procured from her and the certificate of the acknowledgment of it obtained from the justice by the fraud of the defendant Clark Tillis? She admits that on January 23, 1879, he advanced to her husband four hundred and sixty-two dollars and took his note therefor payable in one year with interest from that day. This money was advanced to enable him to pay off a debt secured by a deed of trust on the mill and fifteen acres of land owned by the female plaintiff, the payment of which debt was then being pressed. While there is no direct evidence on the point yet it seems reasonable to infer, that this advance was made to her husband, if not at her instance at least with her approbation, as it was made to avoid the sale of her property. The evidence fails to show distinctly upon what terms this advance was made ; but from her own statement it is reasonable to infer, that she and her husband were to convey one moiety of this mill and fifteen acres of land to Clark Tillis at a certain price, but as this price was less than the four hundred and sixty-two dollars advanced by about one hundred dollars, for this difference a deed of trust was to be executed by her and her husband on

the moiety of the mill and fifteen acres of land which was to remain her property. For some reason, which the record does not disclose, this arrangement was not carried out; but her husband's note for the whole amount, four hundred and sixty-two dollars, was executed to Clark Tillis payable in one year with interest from date, and a deed of. trust was given upon this · mill and fifteen acres of land belonging to her to secure the payment thereof. The evidence shows, that she. preferred carrying out the original agreement and was unwilling to give a deed of trust on the entire mill and fifteen acres of land to secure this four hundred and sixty-two dollars; but her husband and her two sons persuaded her to do so. Clark Tillis too insisted on her so doing. She finally consented, and the deed of trust was drawn and executed by her and her husband. It was acknowledged by them in the manner required by the statute before a justice of the peace, who certified the acknowledgment as required by the statute, and the deed of trust and certificate were duly recorded with the deed. She testifies, that her husband threatened to leave her if she did not sign this deed of trust. This threat she says was made in her house in the presence of her son; but she does not remember, whether any one else was present or not. Her son's deposition was taken. But he does not in this respect corroborate his mother. He says not one word about any such threat'; nor is she in this respect corroborated by any one else. Her husband's deposition is taken; and he says nothing of this character. The justice testifies, that he examined her privily and apart from her husband, and she acknowledged the deed of trust and declared, that she had willingly executed it and wished not to retract it, though he states that he knew, that at one time she did not want to execute it.

As her sons advised her to execute this deed of trust, it seems much more probable that she changed her mind and agreed voluntarily to sign it, than that her husband threatened to desert her, if she would not, and that she was thus forced to sign it against her will. It is true, that when she signed the deed of trust and was asked by the justice if she did so willingly, she said she did but she added in an undertone not heard by the justice "but not with a safe conscience."

This, it is to be supposed, she did not intend him to hear. At any rate he did not hear it. It is true, she says she told him, and also says that Clark Tillis heard her. But this is denied by the justice and by Clark Tillis, and from what one of her own sons says the inference is, that all that Clark Tillis or the justice could have heard her say was, that she signed the deed of trust willingly. They so believed at the time; and there was therefore no pretence, that either Clark Tillis or the justice was guilty of any collusion or any fraud or imposition upon her, she admitting that she knew the contents of the deed of trust perfectly well and so stating to the justice.

It follows therefore from the legal principles we have laid down that no parol evidence could be properly received to show any sort of irregularity in her privy examination or to contradict the facts certified by the justice as having taken place at the privy examination. And the certificate of the justice is in due form certifying that Isaac Entsminger and Julia his wife acknowledged the same before him in his county and district, and she being examined by him privily and apart from her husband and having the above writing fully explained to her, she acknowledged the said writing to be her act and declared that she had willingly executed the same and that she does not wish to retract it. This is under the circumstances in the absence of all fraud conclusive evidence of these facts; and therefore the recital in the decree of the circuit court of April 24, 1880, "that there was no privy examination as to the trust-deed" is conclusively shown to be erroneous; and the decree of the said court based on this recital ordering, that the said deed of trust be canceled as to her, must be set aside, reversed and annulled, and the appellants must recover of the appellees their costs in this Court expended.

It remains to be considered what decree should be rendered by this Court in lieu of this decree so reversed. It is claimed, that the evidence shows that this four hundred and sixty-two dollars secured by this deed of trust was loaned not to the female plaintiff but to her husband on January 23, 1869, and that long after Clark Tillis had closed up this transaction by taking her husband's note for this four hun-

dred and sixty-two dollars dated January 23, 1869; that he applied to her for a deed of trust to secure this debt of her husband, and that without any new consideration of any sort her husband and she executed this deed of trust to secure this old debt, which was due from her husband only. I do not think that this is a true statement of the circumstances, under which this deed of trust was in all probability executed. But it must be admitted that the circumstances under which it was executed, and the real consideration on which it was based, are set forth in the record in a very vague and indefinite manner; and if this consideration were now really important, it would be proper to remand this cause to the circuit court, that the pleadings might be amended, and the consideration, on which this deed of trust was based, might be distinctly put in issue and fully enquired into, and the proper relief afforded. But is this consideration, on which this deed of trust was based, really a matter now of any sort of importance? And do the rights of the parties depend at all upon whether there was a new consideration, on which this deed of trust was based, or not? Would not the rights of all parties now be the same, if we were to admit that this deed of trust was given to secure a past debt of the female plaintiff's husband without any additional time being given him or any new consideration of any sort arising? By the express terms of section 6, chapter 73 of Code of W. Va. page 471, when this deed of trust was on June 5, 1879, admitted to record in the clerk's office of the county court of Mason county as to the husband as well as the wife, together with her privy examination, acknowledgment and declaration, this deed of trust operated to pass from the wife and her representatives all right, title and interest of every nature, which at the date of this deed of trust she had in any real estate thereby conveyed. It so operated entirely independent of what was the true consideration, on which this deed of trust was based; and it would have so operated, had it been based in fact on no kind of consideration, but had really, as is claimed, been given to secure a past debt of her husband, or indeed of anybody else. A wife like any other person may, if she chooses, give away her property either real or personal; and her conveyance of

it executed in due form in conjunction with her husband and properly acknowledged after privy examination and duly certified and recorded, as is provided by law, will operate to pass her legal estate. This being the case, there only remains for this Court to render the decree, which the circuit court ought to have rendered.

It is therefore considered, that the plaintiffs in the court below, A. W. Rollins and Julia Ann Entsminger, are not entitled to the relief prayed for in their bill, and the injunction awarded therein must be dissolved and their bill must be and the same is hereby dismissed, and that the defendants, Clark Tillis and James Menager, trustee, recover of them their costs in the circuit court of Mason county expended.

THE OTHER JUDGES CONCURRED.

DECREE REVERSED.

22 475
36 240
36 610

22 475
37 419

22 475
40 166

22 475
48 468
48 595

22 475
49 131
50 504

22 474
51 372

22 475
54 101

# WHEELING.

