# CHARLESTON.

NUTTER, *Appellant, v.* BROWN, *etc., Appellee.*

Submitted January 20, 1902.    Decided March 29, 1902.

1. PRINCIPAL—*Agreements—Agent—Res Gestae.*
    A principal is bound by the agreements, representations, concealments and mistakes of his agent made as a part of the *res gestae* of the transaction.    (p. 599).

2. EQUITY—*Written Instruments—Mutual Mistake—Fraud.*
    The jurisdiction of equity to reform written instruments, where there is a mutual mistake, or mistake on one side and fraud or inequitable conduct on the other, if the evidence be sufficiently cogent to thoroughly satisfy the mind of the court, is fully established and undoubted.    (p. 600).

Appeal from Circuit Court, Harrison County.

Action by Cordelia Nutter against Beeson K. Brown *et als.* Decree for defendant and plaintiff appeals..

*Reversed and Remanded.*

M. F. SNYDER, E. G. SMITH and E. A. BRANNON, for appellant.

JOHN BASSEL and W. SCOTT, for appellees.

DENT, PRESIDENT:

Cordelia Nutter appeals from a decision of the circuit court of Harrison County dismissing her bill in chancery filed against

Beeson H. Brown *et als,* for the purpose of having the words "oil
and gas" stricken out of a deed executed by her to him on the
26th day of June, 1890, conveying to him the coal under a cer-
tain tract of land held by her as her separate property.   In her
bill plaintiff insists that when one James M. Plant, acting as
agent for the defendant, and at the same time as a notary pub-
lic, presented her both the original option and the deed for her
signature and read them to her the words "oil and gas" were
therein, and that before she signed them she insisted they should
be stricken out and said Plant agreed to and did strike them out.
In her evidence she testifies, she could not read or write, and
that when the papers were presented to her for her signature,
she declined to sign them unless the words "oil and gas" were
stricken out, as she had not agreed to sell and convey the de-
fendant the oil and gas underlying the land, that Plant at once
agreed that they should be stricken out and went through the
motion of erasing them, and when she signed both the option
and deed she supposed they were erased, as she relied implicitly
on Plant's statement with regard thereto; and she signed the
papers under this belief; that she never knew any better until
after she leased the land for oil and gas, when the lessee upon
investigating the matter gave up his lease, because he had found
out that defendant's deed included the oil and gas; that as soon
as she received this information she went to see the defendant
and tried to get him to correct it, and he refused to do so; this
was not quite three years prior to the institution of this suit;
that she again leased it to Garrett and Arnett, who agreed to be
responsible for this litigation.   James M. Plant testifies that he
was the agent of the defendant, that when he took the option
to the plaintiff to be executed she and her husband both objected
to signing it unless the words "oil and gas" were stricken out,
and he agreed to do so; that he does not remember whether they
were stricken out or not, but such was the agreement; that ac-
cording to his memory the words "oil and gas" were not in the
deed when it was signed; that the defendant instructed him if
the parties asked him to read the deed before signing it to skip
the words "oil and gas" and he declined to do so, saying that if
the parties did not insist on his reading the deed he would not
do so.   The defendant does not testify.

The option shows the words oil and gas printed in it, un-
erased.   The deed shows them interlined and unerased.   With

the exception of some few matters of contradiction this is all the evidence touching the controversy.

The defendant by demurrer and answer relies on two grounds to defeat plaintiff's suit, to-wit: failure of proof and *laches* in bringing suit. As to the first of these grounds it is fully established that it was agreed at the time of the execution of the papers that the words "oil and gas" were to be stricken out, and that plaintiff understood that it had been done. By this agreement defendant is bound because made on his part by his agent. It is the same as though made by himself, for it was a part of the *res gestae.* Story on Agency, sections 135, 139.

The fraudulent or negligent statements, misrepresentations and concealments, when part of the *res gestae,* as well as the positive acts, misrepresentations, declarations and admissions of an agent, are binding on the principal. Therefore to take the most charitable view of the matter the failure to erase the words "oil and gas" was a mere oversight of the agent, although he was directed by the principal to leave them in by concealment, if he could possibly do so. He claims that he left them in by oversight or neglect. It is not shown in evidence that the defendant purchased or paid anything for the oil or gas. He was buying the coal, and if he could get the oil and gas thrown in, he would take it. His sole reliance in this case is on the fact that they appear in the papers, by the confessed mistake of his agent. He does not claim that he bought and paid for them, but that because of their valueless character at the time, the plaintiff was willing to let them go to secure the sale of her coal. There is no evidence to sustain this contention. On the contrary, the evidence is wholly against it. When the plaintiff found out that defendant's agent had made this mistake, she asked defendant to correct it. This he refused to do. The fraud, therefore, does not consist in the original leaving of the words in the papers by oversight, but it is in the refusal to correct the matter when called to his attention, and the determination to take advantage of a mistake made by his agent, as though it were made by himself. He may have been innocent of all intention to defraud in the beginning notwithstanding the undenied statement that he desired his agent to deceive his grantors by concealment if possible. Being informed of the mistake it became his duty to correct it, and he is just as guilty in the eyes of the law in trying to take advantage of it as though

it were an intentional fraud from the beginning. And if his agent left the words in, purposely and deceptively, to defraud the plaintiff defendant is responsible therefor. The papers themselves have but little weight as evidence, for it is admitted that the words "oil and gas" were in them at the time they were presented for signature, and it was agreed between the parties that they should be stricken out. No one denies this agreement. The papers merely show that for some reason it was not carried out in good faith by the defendant, either purposely or by mistake. No witness testifies that they were rightfully left in the deed. The defendant is silent on this question and his agent, who should have stricken them out, testifies to the contrary. It is claimed that Plant's evidence should be given but little weight, as it tends to impeach his certificate of acknowledgement. Under our present statute a certificate of acknowledgment is only *prima facie* evidence of the facts certified therein. This provision was first enacted into our statute law by section 6, chapter 73, Code 1868, and has been carried down to the present time, section 6, chapter 73, Code 1899. It seems to have been entirely overlooked and disregarded in the case of *Rollins* v. *Menager,* 22 W. Va. 461. Also in the case of *Pickens* v. *Knisely et al,* 29 W. Va. 1, although the certificate in the latter case bears date prior to the time the Code of 1868 became operative. These cases follow *Harkins* v. *Forsyth,* 11 Leigh 8, and hold the recitals in the certificate of acknowledgment of a married woman to be judicial in their nature and conclusive, and oral evidence either by the officer or otherwise is not admissible to impeach the same except in cases of fraud or duress, and there should have been added mistake, accident or other adventitious circumstance. A different rule must prevail where the statute provides that the certificate shall be *prima facie* evidence of the facts therein stated. C. L. P., Vol. 1, 618. As this, however, is a question of fraud and mistake as between the original parties to the deed, involving no innocent third party, and the officer was acting as agent of the grantee, his evidence is undoubtedly competent. *Davis* v. *Monroe,* 187 Pa. St. 212. His evidence ordinarily would be of little weight for he convicts himself of fraud, and the court is left to decide as to whether he was guilty of participation of fraud in the first place or is attempting to perpetuate a fraud by his evidence. He claims that the leaving of the words "oil and gas" in the papers was an

oversight or mistake on his part. As his evidence is unimpeached, he is entitled to the presumption of honesty. The fact that he testifies that he was under instructions from his principal to leave these words in by concealment tends to show that he left them in purposely, but this is insufficient to overcome his positive statement that he left them in by mistake. This undenied instruction from his principal shows that he was not bargaining for the "oil and gas," but if by deceitful means or otherwise without openly purchasing them he could obtain them he was willing to accept them without regard to the means employed. He does not as a witness claim that he purchased them or that he is out anything by reason thereof. *Davis* v. *Monroe*, cited, is in all points similar to the present case except the fraud in that case arose in its inception, while this originally was a mistake, and it only becomes fraudulent from the fact that the defendant is willing to profit thereby. This being a purely equitable demand, the statute of limitations has no application.

Nor is the plaintiff barred by *laches*. The doctrine of *laches* is founded upon prejudice to the defendant. He has suffered none. The witnesses to the actual transaction are all living. The testimony of those dead could not aid him in the least. He gave nothing for the property and is in *statu quo* without putting him there. The rights of innocent third parties have not intervened. The fact that plaintiff relied on the statements of his agent until their falsity was brought to her attention by her grantee cannot be taken advantage of by him. No man can take advantage of his own wrong or duplicity against those who assume he is honest and trust him accordingly. Not until his duplicity is brought home to them by facts which put them on their guard can *laches* be imputed to them. She trusted him and continued that trust until the knowledge that she had been deceived was brought home to her. She having been deceived by them, he cannot take advantage of the acts of himself or his agent. It is said that she had the same means of information he possessed. This is not true, for she did not know that he would take advantage of her. If she had known it she would have been placed on her guard, and his agent could not have mislead her. *West End Real Estate Co.* v. *Claiborne*, 97 Va. 734, 750. Nor does the doctrine of *laches* apply in this case in my opinion, for she was in possession claiming both the legal and equitable, and his deed was a mere cloud on her title. 18

Am. & En. En. Law, 124.   On page 125 of the last citation it is
said:

"*Laches* will not be imputed to one in peaceable posses-
sion of property, for delay in resorting to a court of equity to
establish his right to the legal title.   The possession is notice
to all, of the possessor's equitable rights, and he need only as-
sert them when he may find occasion to do so." *Weekly* v.
*Hardesty,* 48 W. Va. 39; *Simmens Creek Coal Co.* v. *Doran,*
142 U. S. 417; *Ruckman* v. *Corey,* 129 U. S. 387; *Mills* v. *Lock-
wood,* 42 Ill. 111, 118; *Maders* v. *Lawrence,* 49 Hun. (N. Y.)
361; *Wiswall* v. *Hall,* 3 Paige Ch. (N. Y.) 313; *Hall* v. *Erwin*
60 Barb. 349.

The plaintiff's possession of the land, including the oil and
gas, has never been disturbed.   Defendant did not attempt to
assert his title thereto until after she had leased the same, and
her possession is still undisturbed, for the South Penn Oil Com-
pany would not attempt to develop the same until they had
direct authority from her to do so.   The law being plainly
against the defendant, the court cannot do otherwise than re-
verse the decree complained of and enter a decree reforming the
deed in controversy by striking therefrom the words "oil and
gas" as interlined therein, and remand the case for disposition
of the funds in the hands of the special receiver, which is ac-
cordingly done.


NOTE BY POFFENBARGER, JUDGE:


I concur in the decision of this case for the reason that the
defendant has failed to testify and exculpate himself from the
charge concerning directions as to the method of obtaining op-
tions and conveyances of oil and gas, and as to whether there is
a mistake in the deed.   His silence may be due wholly to his
belief that his contradiction of this testimony is unnecessary, or
that it is not such as calls upon him to speak, and he may be
entirely guiltless of what is charged.   But the court cannot act
as his guardian or protector in respect to a thing which he
should have done, if it could have been done, and speak for him.
In the absence of his silence, the evidence would be far from sat-
isfactory.   There are few cases in which deeds and other solemn
writings have been permitted by the courts to be contradicted
and altered or canceled upon oral testimony, when the evidence

did not show admission on the part of the defendant of mistake or fraud, or show facts and circumstances from which such admission was clearly inferable.

BRANNON, JUDGE:

I acquit Brown of any fraud. My opinion is that Plant took the option from Mrs. Nutter, using a printed form including coal, oil and gas, and that when Chapin drew the deed he used a printed blank having only coal in its granting clause and interlined "natural gas and oil" to agree with the option. It is not claimed that Brown was present when either option or deed was executed. Plant took them. Brown merely found the instruments as they were. But though this is the case, there stands the evidence of Mrs. Nutter that she refused to sign with oil and gas in the option, and directed the words "natural gas and oil" to be stricken out. There stands the evidence of Brown's agent, Plant, that Mrs. Nutter did so, and that he so promised to change the option. This is confirmed by young Nutter, who says his father refused to sign the deed with those words in. There stands the evidence of a disinterested witness, Flowers, showing that Mrs. Nutter went to Brown to protest against oil and gas being in the option, and demanding that they be waived by Brown. There stands the fact that Mrs. Nutter gave a deed of trust to some one excepting only coal, not oil and gas, a strong circumstance to show that she believed she had not optioned oil and gas.

Can we arbitrarily reject and discredit this evidence without any adverse showing? True, there are certain features of improbability in the evidence; but that evidence of Flowers and the deed of trust confirm circumstantially the evidence of Mrs. Nutter, and Plant in the specific point that oil and gas were not to be in the option, and of course the deed must follow the option. There remains the fact, discarding intentional fraud, that the option, by Plant's mistake in omitting to erase those words, does not do what it was intended to do. This point we can not change, unless we arbitrarily disregard evidence.

As to *laches*. I would apply it, if Brown had given evidence that the interview with Mrs. Nutter, was in 1893; but under the evidence time is too short.

*Reversed.    Remanded.*