# CHARLESTON.

WATRING v. GIBSON *et al.*

Submitted May 6, 1919.   Decided May 13, 1919.

1. LOGS AND LOGGING—*Sale of Timbers—Mistake or Fraud—Recovery of Money Paid.*

    Equity has jurisdiction of a suit by the purchaser to recover back a portion of the purchase money paid to the vendor for timber on a boundary of land, estimated to be a certain number of feet stumpage, when such estimate is much more than the actual quantity, and the mistake was caused by the false representations of the vendor, or his agent, respecting the acreage of the boundary. (p 209).

2. HUSBAND AND WIFE—*Principal and Agent—Agent's Representation—Liability of Principal—Married Woman.*

    A principal is bound by representations as to existing fact, made by his agent, in regard to a transaction entrusted to him; and this rule applies to the transactions of an agent for a married woman, respecting those matters concerning which married women are permitted by law to contract. (p. 210).

3.  SAME—*Husband's   A g e n c y   for   Wife—Agent's   Fraudulent
    Representations.*

    The marital relation does not prevent a husband from acting as
    agent for his wife, and when she permits him to act as her agent
    in negotiating a sale of her separate real estate and afterwards
    signs and acknowledges a written contract in pursuance thereof,
    in the execution of which he joins, and she receives the considera-
    tion therefor, she is bound by the fraudulent representations of her
    agent respecting the acreage and is liable to account to the pur-
    chaser for the shortage.  (p. 210).

4.  SAME—*Husband's Agency for Wife—Fraudulent Representations—
    Liability.*

    Where a married woman receives the consideration which a pur-
    chaser of her property has been induced to pay, in reliance upon
    the fraudulent representations of her agent, equity will not permit
    her to retain the benefits thereof and repudiate the liability arising
    out of such fraudulent representations of her agent, even though
    she did not authorize the agent to make them.  (p. 210).

5.  JUDGMENT—*Set-Off and Counterclaim—Trespass on the Case—Mer-
    ger and Bar.*

    Where the vendor of certain kinds of growing timber brings
    an action of trespass on the case against the purchaser for the
    cutting of certain other kinds, not included in the contract of sale,
    the purchaser is not thereby estopped from suing in equity to
    recover back part of the purchase money, paid on account of false
    representations by the vendor or his agent, on the truth of which
    the purchaser relied and was thereby induced to buy.  The matters
    averred in the bill cannot be off-set against such action at law nor
    pleaded in defense thereof.  (211).

6.  APPEAL AND ERROR—*Payment of Decree—Assignment of Error.*

    A party to a cause, who has paid a money decree against him,
    cannot, after the cause has been appealed by the opposite party,
    cross-assign as error the rendering of such decree.  (p. 211).

Appeal from Circuit Court, Randolph County.

Suit in Equity by S. H. Watring against Virginia S. Gib-
son, and husband, to recover for shortage in quantity of
standing timber paid for, and to enjoin defendant's action
at law.  Decree for defendant as to shortage, and for plain-
tiff against defendant Virginia S. Gibson, and plaintiff ap-
peals.

*Reversed in part.  Affirmed in part.  Decree for plaintiff.*

*Samuel T. Spears,* for appellant.

*Leroy See* and *A. M. Cunningham,* for appellees.

WILLIAMS, JUDGE:

This suit in equity was brought by S. H. Watring against Virginia S. Gibson and J. A. Gibson, her husband, to re cover back $1,125.00, of the purchase price paid Virginia S. Gibson for standing timber, on account of a shortage in the quantity purchased and paid for, and to enjoin her from prosecuting an action at law, brought against this plaintiff to recover damages for cutting dead timber, which was interspersed with the green timber purchased, but which was not included in the contract of sale.

The contract bearing date April 22, 1915, was signed, sealed and acknowledged by both Mrs. Gibson and her hus band and showed a sale of "all the green hemlock and spruce timber 10 inches and over in diameter standing and being on that certain tract of land containing 410 acres," at the price of $3.00 per M. feet stumpage. It gave the location of the tract and the terms of payment, which have been fully complied with and are not now material, the entire sum paid for the timber being $4,500, determined upon the basis of an estimated stumpage of 1,500,000 feet. The stump- age was not ascertained when the contract was signed, but it was therein provided that it should be determined in the following manner: Each party was to select an estimator and these two an umpire, in case they failed to agree, who were to make the estimate "in the tree according to the standard rule of lumbermen, and said estimate to be final and complete and to constitute the basis of settlement." Only a comparatively small portion of the 410 acre tract had any green spruce or hemlock on it, and it formed a practically contiguous boundary, irregular in shape, fringed and inter- spersed with dead, standing spruce and hemlock and with fallen trees of the same kind that had been blown down by wind storms. All the negotiations and transactions con-

cerning the sale and ascertainment of the stumpage were had between plaintiff and J. A. Gibson, who acted for and on behalf of his wife. All she did was to sign and ac- knowledge the contract in her own proper person, and re- ceive the purchase money, either directly from the pur- chaser or through her husband as her agent. Plaintiff and J. A. Gibson each selected an estimator and all four of them went upon the ground and the two estimators proceeded to make their estimate in the following manner. They marked off an acre in what they considered the heaviest timbered part of the boundary and another acre in the lightest tim- bered part of it, estimated the quantity of timber on each of these acres and took one-half of the sum of the two as being a fair average of the quantity per acre on the timbered boundary. They did not, however, measure, or determine in any manner the number of acres in the boundary, but both of them swear they relied on the representations made to them at the time by J. A. Gibson, that he had measured the green timbered boundary and found it contained sixty acres, and that they relied on his representations as being true, and ascertained the stumpage on the entire boundary by multiplying the estimated stumpage of one acre, 25,000 feet, by sixty. Oscar Latt, the estimator selected by plaintiff, says he agreed the quantity was 1,500,000, "only if there was 60 acres." George Phares, estimator selected by Gib- son, swears Mr. Latt remarked two or three times to Mr. Gibson, or in his presence, that he did not think there were sixty acres, and that Mr. Gibson said "him and some one else, I don't remember who, had run across one end and down one side and figured up what was in it, 60 or 61 acres." He further says, "We don't know anything about it our selves, we were going by what Mr. Gibson said about the number of acres." Plaintiff's own testimony is to the same effect. After the timber had been paid for on the suppo- sition that the boundary was 60 acres, and after all, or nearly all of the timber had been cut, and before bringing this suit, plaintiff procured an accurate survey of the boundary

to be made by a surveyor and learned thereby that it con-
tained but 45 acres.

Three and a half acres of dead, standing timber was in-
cluded in the boundary, which Gibson told plaintiff and the
estimators they might include with the green timber, and
they say they did include it in making the average of 25,000
feet per acre. Plaintiff cut and manufactured this dead
timber, and it was to recover for this trespass that Mrs.
Gibson brought the action at law which plaintiff prayed to
have enjoined. On final hearing upon bill, answer, replica-
tion and depositions of numerous witnesses, the court en-
tered a decree refusing to grant plaintiff any relief on ac-
count of shortage in the acreage, for the reason, stated in a
written opinion printed with the record, that the court was
of the opinion Mrs. Gibson should not be held responsible
for the representations of her husband as to the number of
acres in the boundary, notwithstanding the learned chancel-
lor found the fact, "established by the proof," to be that
Gibson had made such declarations. In addition thereto,
both the estimators swear they did not estimate the acreage,
did not know what the boundary contained and relied on the
statement of Gibson as true, and determined the quantity
of timber on the whole boundary accordingly. Plaintiff's
testimony is to the same effect, that no measurements were
made by the estimators to ascertain the acreage, and that
Gibson stated several times that the boundary of green tim-
ber contained 60 or 61 acres. In view of the established fact
that Gibson did represent that he and another man had
measured the boundary and found it contained 60 or 61 acres,
and the undisputed testimony of the surveyor, who after-
ward surveyed it, that it contained only 45 acres, considered
in connection with the uncontradicted testimony of the es-
timators, to the effect that they relied on Mr. Gibson's state-
ment as true and made their estimate accordingly, we think
the court erred in denying plaintiff relief on account of the
shortage. However, the court decreed plaintiff a recovery
of $834.96 on account of the dead timber which Gibson had
assumed to authorize him to cut and which had been in-

cluded in the estimate, because he had paid Mrs. Gibson for it, and the court had refused to enjoin her from suing to recover the value of it, in effect, holding she had a right to recover on the ground that it was not included in the description of the timber sold, and that standing timber, whether living or dead, was a part of Mrs. Gibson's land, which could be disposed of only in the manner provided by the statute regulating the disposition of lands of married women, in which views we are inclined to think the court was entirely correct. But these questions are not involved in this appeal and are not among those decided in this opinion. Neither do they affect the question to be decided, which is, whether plaintiff has a right to recover back a part of the purchase price on account of a shortage in the estimated quantity of timber, caused by the fraudulent representations of the vendor's agent as to the acreage in the timber boundary.

Although plaintiff has accepted the benefit of that part of the decree in his favor, he may, nevertheless, appeal from that part of it denying the special relief prayed for, because the decree expressly provides that his acceptance of the amount decreed him should not prejudice his right of appeal in respect to his claim to reimbursement on account of shortage in acreage. The saving provision of the decree prevents the application of the doctrine of waiver which might otherwise defeat his right of appeal, as was the case in *McKain* v. *Mullen,* 65 W. Va. 558; discussed also in *Eakin* v. *Eakin,* 83 W. Va. 512, 98 S. E. 608.

The bill seeks to recover back money which plaintiff was induced to pay because of the fraudulent representations made by the defendant's husband and agent, on the truth of which he relied and was thereby misled, the very kind of a wrong that a court of equity delights to correct, notwithstanding courts of law may furnish a concurrent remedy. See numerous cases cited in 6 Encyc. Dig. Va. & W. Va. Cases, 476.

Where a vendee has been induced, by the false and fraudulent representations of the vendor or his agent, to accept

a conveyance for land, and afterwards discovers it contains a materially less quantity than represented, equity will give relief by abating the purchase price, or rescinding the contract and restoring the parties to their former status. *Crislip v. Cain,* 19 W. Va. 438; and *Smith* v. *White,* 71 W. Va. 639.

The marital relation does not prevent a husband from acting as agent in the management of his wife's property. *Trapnell* v. *Conklyn,* 37 W. Va. 242. No rule of law is better settled and more universally applied than the rule which holds a principal bound by the declarations and representations as to matters of fact, not mere expressions of opinion, made by his agent respecting a transaction entrusted to him. *Nutter* v. *Brown,* 51 W. Va. 598. "Where the acts of the agent will bind the principal, there his representations, declarations and admissions respecting the subject matter will bind the principal, where made at the same time and constituting a part of the *res gestae.*" *Coyle* v. *B. & O. R. R. Co.,* 11 W. Va. 94. This rule applies to married women respecting those matters concerning which they are authorized by law to contract. Mrs. Gibson could sell and convey her timber by deed, acknowledged by her, her husband joining therein, and did dispose of her timber in that manner. She would also be liable for any fraudulent representations made by her in respect thereto. 2 Bishop's Law of Married Women, §490; and 21 Cyc. 1425. The fraudulent representations of which plaintiff complains were made by Mrs. Gibson's husband while acting as her agent, after the written contract had been fully executed by her, and were made in her interest for the purpose of increasing the amount of money she was to receive under the contract, and must, therefore, be regarded as having been made by herself. 21 Cyc. 1425. It does not appear that she authorized him to make those statements, or that she even knew that he had made them, before receiving the money for the timber. Still she cannot be permitted to retain the benefits of the contract, procured for her by her husband and at the same time repudiate any

liability arising out of his fraudulent conduct in relation thereto. *Dewing* v. *Hutton,* 48 W. Va. 576; *Quarg* v. *Scher,* 136 Cal. 406; *Knappen* v. *Freeman,* 47 Minn. 491; *Keith* v. *Keith,* 26 Kan. 26; and *Adams* v. *Mills,* 60 N. Y. 533. All these cases, except *Dewing* v. *Hutton,* are cases in which the husband acted as agent for his wife. See also *Danser* v. *Johnsons,* 25 W. Va. 380.

Having held her husband out as her agent in negotiating the sale of her timber, and having signed and acknowledged a written contract therefor, executed in the manner provided by law for the sale of married women's real estate, and having received the benefits thereof, she is estopped to deny his agency. 13 R. C. L. 1169.

Counsel for defendant cross-assign the following errors in their brief. First, they insist plaintiff should have litigated the matters set up in his bill, in defense of the action at law which he asked to have enjoined. That was an action of trespass on the case for cutting timber, an action foreign to the contract, and while the matter complained of in the bill might have formed the basis of an action at law, either in tort for the deceit, or in assumpsit for money had and received, still our procedure does not admit of set-off in an action of tort, hence they could not have litigated in defense of that action. Second, in not sustaining the demurrer in its entirety to the plaintiff's bill. At a term previous to the one at which the final decree was rendered, the court sustained the demurrer to the bill in so far only as it prayed for an order enjoining prosecution of the action at law. The bill is clearly good in respect to the other relief prayed for..

The third cross-assignment of error relates to the decree against Mrs. Gibson for the repayment of the money, paid on account of the dead timber not included in the written contract of sale. The decree in that respect was clearly right. She could not be permitted to retain the money actually paid for the timber, and at the same time recover for the trespass committed in cutting it; that would be unjust and unequitable. But even if the decree in that respect were erroneous,

defendant by paying plaintiff the amount decreed him on that account has waived her right to appeal. Payment ended the litigation in respect to that claim.

The decree gave plaintiff a recovery against Mrs. Gibson for $834.96 on account of the dead timber, which had been included in the estimate of green timber, for the whole of which, both green and dead, plaintiff had paid $4,500.00. Mrs. Gibson should have credit for the amount decreed against her, thus reducing the amount which plaintiff actually paid for the green timber on the estimated boundary, to $3,665.04, one fourth of which he is entitled to recover back from her, as the shortage of fifteen acres is one fourth of the acreage which Gibson had represented in the boundary.

In so far as the decree appealed from denies plaintiff relief on account of the shortage in the estimated amount of timber, it will be reversed and a decree entered here in his favor for the sum of $916.26, with interest thereon from April 22, 1915; and in all other respects the decree will be affirmed, with costs to appellant.

*Reversed in part. Affirmed in part. Decree for Plaintiff.*