## . CHARLESTON.

IONE G. MOODY *et als. v.* SMOOT ADVERTISING COMPANY AND CHARLES S. SMOOT.

(No. 5046.)

Submitted May 6, 1924.   Decided February 24, 1925.

REFORMATION OF INSTRUMENTS—*If Party to Written Instrument, Knowing it Does 'Not Express Real Agreement, and That Other Party is Ignorant of Such Fact, Takes Advantage Thereby, Equity Will Reform Writing.*

If one of the parties to a written contract, knowing that the instrument does not express the real agreement, and that the
98 W. Va.

other party is ignorant of the discrepancy between the instrument and the agreement, takes advantage of the latter's ignorance or mistake, equity will afford relief to the injured party by reforming the writing in accordance with the agreement.

(Reformation of Instruments, 34 Cyc. p. 921.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Wood County.

Suit by Ione Gambrill against the Smoot Advertising Company and another. After death of plaintiff, suit was revived in name of Ione G. Moody and others, her heirs at law and devisees. From a decree for defendants, plaintiffs appeal.

*Reversed.*

*Ambler, McCluer & Ambler,* for appellants.
*Smith D. Turner,* for appellees.

LITZ, JUDGE:

Mrs. Ione Gambrill brought this suit December 8th, 1921, against Smoot Advertising Company, a corporation, and Charles S. Smoot, seeking cancellation of a written lease entered into between her and the Smoot Advertising Company on the 19th day of June, 1920, covering a vacant lot of real estate, situated in the city of Parkersburg, at the northwest corner of Seventh and Avery streets. The property is very valuable, occupying two corners of a block in the heart of the business district, among the largest and most important business buildings of the city, the testimony showing it to be worth probably $60,000.00. The lease is for a period of ten years at an aggregate rental for the period of $15,000.00, payable at the rate of $1,000 annually in monthly installments for the first three years, $1,500.00 annually for the next four years, and $2,000.00 annually for the succeeding three years; with the privilege of renewal for two subsequent terms of ten years each, at rental to be fixed by arbitration in event of disagreement. Mrs. Gambrill having died March 25, 1923, the suit was thereafter revived in the names of her heirs at law and devisees, who prosecute this appeal from the

decree of the Circuit Court dismissing the bill. The prayer for cancellation of the lease is based upon the alleged fraudulent conduct and representations of Charles S. Smoot, president of the Smoot Advertising Company, who on behalf of said corporation negotiated the transaction with Ione Gambrill through her daughter, Mrs. Elizabeth Gambrill Jones, one of the plaintiffs. The failure of the lease expressly to provide that it shall terminate upon the sale of the property by the lessor is the foundation of the suit.

It is charged that the defendant Smoot, knowing the intention of the lessor to retain the right of cancellation by sale, nevertheless induced her to execute the lease upon his representation that this right had been reserved. Smoot admits "it was understood at all times that Mrs. Gambrill had the right to sell," limited only by the option of the lessee to buy "at the best price offered by any prospective *bona fide* purchaser;" but claims that nothing was said in connection with the right of sale "regarding cancellation" of the lease. Clause 12 of the lease, which, as plaintiffs claim, served as a cloak to conceal the alleged fraud, provides:

> "It is agreed that at any time during the existence of this lease or any continuation thereof, the lessee shall have the right to purchase the premises hereby leased at such a price and upon such terms as are equal to the best price and terms offered the lessor by any actually *bona fide* prospective purchaser, and that lessor shall give to the lessee ample, satisfactory and acceptable proof upon legal oath that such other offer is *bona fide* and in good faith, but this provision, however, shall not be construed as binding the lessee to so buy the premises, but merely to give it the first opportunity by reason of its holding the leasehold rights thereto."

At the time the lease was executed Mrs. Gambrill, a widow more than eighty years of age, lived with her eldest child, George, in the city of Parkersburg. She had been in delicate health for a considerable time and, because of her frail physical condition and defective hearing, led a life of seclusion, having gone to church but once in ten years and to the city stores, within a few blocks of her home, only twice

in twenty years. The son, George, did not take an active part in her business affairs. Two daughters had been married for some years and resided in another state. The youngest child, Mrs. Elizabeth Gambrill Jones, who attended to some matters of business for her mother, had married a few years previously and lived with her husband in Morgantown, returning to the old home at intervals. While Mrs. Gambrill, principally through her daughters, had been party to several deeds and leases during her lifetime, neither she nor Mrs. Jones possessed business ability or experience to a substantial degree, compared with the superior business skill and judgment of defendant Smoot, who was an astute and successful business man of long experience in large affairs, having theretofore negotiated at a fair estimate five hundred property leases. He called at the Gambrill home Saturday evening, June 12, 1920, to discuss with Mrs. Jones, then visiting her mother, a proposed lease of the property. On this occasion and thereafter throughout the negotiations resulting in the execution of the lease, Mrs. Gambrill was represented by Mrs. Jones. Smoot returned the following day (Sunday) and spent the evening discussing with Mrs. Jones the terms of the proposed lease. On Monday morning she met him by appointment at his office, at which time and place, in her presence, he dictated to his sister, Mrs. Cotterman, as stenographer, a letter containing tentative provisions of the lease, a copy of which was promptly furnished Mrs. Jones. Having secured her tacit agreement, upon his suggestion, to leave the preparation of a written lease contract to his counsel, Judge Forrer, an attorney of Parkersburg, that evening Smoot and Mrs. Jones went to the home of Judge Forrer, where the three discussed the terms of the lease. At his office on Wednesday, with the letter before him, and in the presence of Smoot and Mrs. Jones, Judge Forrer dictated the first draft of the lease, a copy of which she later submitted to Judge Showalter, another attorney of Parkersburg, while he was calling at the Gambrill home. Inspecting the paper, as it seems, very casually, Judge Showalter inserted in pencil a provision requiring the lessee to pay one-half of the sewer and paving assessments made during the first ten-year period of the lease, but made no further changes.

After the final draft had been prepared by Judge Forrer, Mrs. Jones expressed a desire to have the opinion of a business man upon the advisability of her mother entering into the lease, and the name of Lyle Jones, cashier of the Wood County Bank, was suggested. In company with Smoot she immediately interviewed Lyle Jones, who states that upon being advised by Smoot that the lease gave Mrs. Gambrill the right of cancellation on sale of the property, he recommended its execution on her part as a good business proposition.

On Saturday, June 19, 1920, Smoot arranged with Judge Showalter, as a notary public, to take the acknowledgment of Mrs. Gambrill to the lease that evening. Pursuant to this arrangement, Judge Showalter called at the house of Mrs. Gambrill, and observing, as he says, that the paper was in legal form, took her acknowledgment thereto. On the same evening the lease was delivered to Smoot.

In December, 1921, Clyde C. Boso, president of the National Woolen Mills, who, with some associates, had become interested in acquiring the property for a hotel site, after having investigated the title thereto advised Mrs. Jones of his conclusion that the lease was not subject to cancellation upon a sale of the property to any one other than the lessee. At this she expressed great surprise and immediately employed counsel who, after an unsuccessful effort to secure from the lessee a modification, giving the lessor by express stipulation the right to cancel the lease upon sale of the property, filed this suit.

Mrs. Gambrill testifies that she executed the lease with the express understanding and the belief that it gave her the right to cancel it by selling the property. Mrs. Jones says it was thoroughly understood and agreed between her and the defendant Smoot that the lease was subject to cancellation upon sale of the property by the lessor; that he represented to her such right had been preserved in Clause 12 of the written instrument; and that she consented to the writing as agent for her mother, believing the representation to be true. Smoot admits, as already stated, it was understood at all times that Mrs. Gambrill had the right to sell, limited only by the option of the lessee to buy at the best price offered by

any prospective *bona fide purchaser,* but claims that nothing was said in this connection regarding cancellation of the lease. Mrs. Cotterman, secretary of the defendant company, testifies that she does not recall any discussion between her brother and Mrs. Jones of the right of the lessor to cancel the lease in event she desired to sell the property. Miss Heihle, the stenographer to whom Judge Forrer dictated the lease, states that no discussion of that nature took place in her presence. Judge Forrer says no representations were made before him during the discussion or preparation of the lease that it was being entered into subject to cancellation, upon sale of the property by the lessor, or that the lease was so restricted by Clause 12 of the written agreement. He is not positive, however, that the right of sale by the lessor was not mentioned. The testimony of the last three witnesses, accorded full faith and credit, is not decisive of the issue.

Lyle Jones, disinterested and creditable, and contradicted only by the defendant Smoot, says Smoot represented to him that the lease gave the lessor the right of cancellation by sale of the property. He states further that except for this representation having been made to him by Smoot, and without also feeling assured that such right had been reserved to Mrs. Gambrill, he would not have recommended the execution of the lease on her part. The testimony of this witness should be accorded great weight, not only because of his credibility and disinterestedness, but on the further ground that the representations were impressed upon his memory by the occasion for the transaction. Not only this, but it being admitted that the witness recommended the execution of the lease on the part of Mrs. Gambrill as a good business proposition, the court should not hesitate to accept his statement as true. It certainly cannot be said, and the defendants do not undertake to prove by any witness, that an unconditional lease of the property for thirty years upon the terms stipulated, was beneficial to the lessor.

Mrs. Jones was warranted in the belief that the lease was being made subject to sale of the property by the lessor, upon the evidence of Smoot himself; and she was further justified under the circumstances, in accepting his represen-

tation that this right had been preserved in Clause 12 of the written instrument.

It has been held that a reservation to the lessor of the right to sell the premises should be construed as conferring such right of sale discharged of the lease, for the very good reason that such provision otherwise would be useless, the lessor having the right by law in the absence of contractual restraint, to sell the property subject to the lease.

We think Clause 12 of the lease contemplates sale by the lessor. This much is conceded. It is, however, argued that the right of sale does not extend to the "premises," as stated in the writing, but is limited to the reversion and rent under the lease. The writing was prepared by the lessee, through its representative and attorney, and should therefore be construed against it in favor of the lessor. "It is well settled in West Virginia where a lease is prepared by the lessee and there is doubt as to its construction, it must be construed against the lessee as the *party who selected the terms and expressions used.*" *Beltman* v. *Harness*, 42 W. Va. 434; *United Fuel Gas Co.* v. *Cabot*, 96 W. Va. 387, 122 S. E. 922. The defendants deny the alleged fraudulent representations on the part of defendant Smoot and strongly urge the claim that even if such charge has been proved, Mrs. Jones did not trust him, but sought independent advice from Judge Showalter. We do not think the evidence warrants the conclusion, however, that she acted exclusively on the advice of Judge Showalter, who testifies that he was advised by Mrs. Jones prior to the execution of the lease that it was being made subject to the right of the lessor to cancel the contract by sale of the property. Judge Showalter does not state whether he advised either Mrs. Jones or Mrs. Gambrill that the writing was sufficient to save this right to the lessor, or what opinion he formed on this point from his cursory examination of the lease. Mrs. Jones says he told her the paper was all right after she had informed him of the lessor's purpose to retain the right of cancellation.

In our view of the case it is unimportant whether Mrs. Jones relied exclusively on the advice of Judge Showalter, if any he gave, or was wholly or partly influenced by the repre-

sentations of Smoot. The evidence clearly warrants the conclusion that she and her mother, at the time the latter executed the lease, firmly believed that the desired right had been protected by the terms of the instrument in accordance with their intention; and that Smoot not only knew they were being misled without advising them of their mistake, but actively represented to Mrs. Jones that the right of cancellation had been preserved to the lessor in Clause 12 of the writing.

Where one party to a written contract was aware, not only that the instrument did not express the real agreement, but that the other party was ignorant of the discrepancy between the instrument and the agreement, the case is one for reformation. "A court of equity will not permit one party to take advantage and enjoy the benefits of ignorance or mistake, either of law or fact, of the other, which he knew of and did not correct." *Keister* v. *Myers,* 115 Ind. 312, 17 N. E. 161; *Hollingsworth* v. *Stone,* 91 Ind. 244; Pomeroy's Equity Jurisprudence, 4th ed., Secs. 847, 2097 and note; *Lionel C. Simpson Plumbing & Heating Co.* v. *Geschke,* 76 N. J. Eq. 475, 79 Atl. 427; *Zarecki* v. *Guarantee Realty Company,* 82 N. J. Eq. 489, 89 Atl. 513; *Gross Construction Co.* v. *Hales,* 37 Okl. 131, 129 Pac. 28.

The rule should apply with greater force in a case like this where the language of the instrument is such as to mislead the injured party into the belief that it properly sets forth the agreement. So, without determining whether the written lease upon its face, giving consideration to all of its parts, should be construed as reserving to lessor the right of cancellation by sale of the property, we hold that by reason of its ambiguity in this respect, justifying the lessor, as a result of inequitable conduct on the part of defendant Smoot, in the belief that by the terms of the lease this right had been preserved to her, the writing will be construed and reformed, so as to give to the plaintiffs the right to cancel the lease by selling the property, after giving the defendant Smoot Advertising Company the privilege of purchasing the same at such price and upon such terms as are equal to the best price

and terms offered by any other actual *bona fide* prospective purchaser.

The bill does not contain a specific prayer for reformation of the instrument, but such relief under the facts not being inconsistent with cancellation. it is proper under the prayer for general relief.

*Reversed.*