# CHARLESTON.

NATIONAL FRUIT PRODUCT COMPANY *v.* ALEXANDER PARKS *et al.*

(No. 6060)

Submitted November 12, 1929. Decided December 10, 1929.

322

*C. N. Campbell* and *J. O. Henson,* for appellant.
*Martin & Seibert,* for appellees.

MAXWELL, JUDGE:

This is a suit to reform certain deeds in their description and to enjoin the prosecution of an action of trespass which is an outgrowth of the controversy over the portion of the description sought to be performed. The suit is based on alleged mistake on the part of the plaintiff and alleged fraud or inequitable conduct on the part of Alexander Parks, the principal defendant. The plaintiff appeals from a decree of the trial chancellor dismissing its bill.

Subsequent to the advent of prohibition in this state in 1914, the Hannis Distilling Company offered for sale its property at Martinsburg, comprising several buildings and about twenty acres of ground. The plaintiff became interested in 1919. One or two offers for the whole property were rejected. Negotiations continued. Officers of the plaintiff were brought into contact with both Alexander Parks, general manager of the Hannis plant at Martinsburg, and his son, A. B. Parks, a real estate broker of the same city, trading as A. B. Parks & Company. The possibility of a purchase by

plaintiff of a part of the property was considered. In one of the conferences Alexander Parks furnished to Frank Armstrong, vice-president of the plaintiff, and the acting officer of the plaintiff in these negotiations, a blue print of the Hannis property. On this blue print Mr. Parks drew with a pencil a line indicating a division of the property as discussed by Mr. Armstrong and himself. Mr. Armstrong took this blue print with him to his office at Washington, D. C., and under date of April 1, 1919, wrote a letter on behalf of the plaintiff to A. B. Parks, the real estate broker above mentioned (the letter being addressed to Alex. B. Parks and Company), advising him: ''We have decided to accept your proposition of $50,000.00 for that portion of the Hannis Distilling Company's property referred to on plat * * * and the same which was outlined upon a blue print by Alexander Parks, Sr. This property is more particularly described as follows: * * *.'' The description then begins at the point at which the line drawn by Alexander Parks intersects Pennsylvania Avenue and follows that line as the principal dividing line between the portion of the property sought to be purchased and the remaining portion. On April 5th the plaintiff received at its office at Washington a telegram from A. B. Parks and Company reading as follows: ''We are in receipt of letter from New York confirming sale to you.'' It seems that this telegram was sent by the younger Parks on the basis of an arrangement, actual or contemplated, by which the Distilling Company was to sell and convey the whole of its Martinsburg property to Alexander Parks, who was to convey the plaintiff the portion for which it was negotiating and was to retain as his own and pay for the remaining portion.

Much surveying was done and several plats were prepared. T. W. Sparrow, an engineer employed by Alexander Parks, prepared three plats, dated, respectively, May 1, June 11, and August 16, 1919. George W. Van Metre, an engineer employed by the plaintiff, checked over the Sparrow surveys and made two plats of July 1 and July 3, 1919, respectively.

Two contracts were entered into under date of June 9, 1919, though it is in evidence that these instruments were

324

not actually executed until several weeks later.  One of the contracts is for 5.43 A., being the portion first in contemplation of the plaintiff's officers and the other for .88 A., additional land which they found it would be necessary to acquire to afford sufficient space for adequate railroad sidetrack facilities.  The deed from Alexander Parks to Frank Armstrong and three associates for 6.31 A., comprising the two parcels aforesaid, and the deed from Armstrong and associates to the plaintiff, bear date November 16, 1919.

This controversy pertains to a small irregularly shaped parcel of land about forty feet in extent on its longest side and containing probably not to exceed five or six hundred square feet located at the place used as a drive-way entrance from Pennsylvania Avenue to the plaintiff's property.  In 1923, Alexander Parks caused a fence to be constructed diagonally across the driveway in such manner as to interfere with plaintiff's use thereof.  Plaintiff's employees tore down the fence.  Defendant, claiming that the fence was located on one of the property lines as fixed by the deeds, instituted an action of trespass against the plaintiff for destroying the fence.  This chancery suit to enjoin the law action and to reform the deeds from *Parks* to *Armstrong et al.*, and from the latter to the plaintiff followed.

On behalf of the plaintiff it is said that the pencil line placed on the blue print by Alexander Parks established a corner at Pennsylvania Avenue and created a boundary line with express reference to which the plaintiff made its offer of April 1, 1919, and purchased the property; that in all the negotiations with Alexander Parks the corner as now claimed by plaintiff was the corner recognized and considered by both Mr. Parks and plaintiff's representatives; that none of its representatives ever realized that in each of the plats, contracts and deeds later made there was a departure from the corner indicated by the intersection of the Parks pencil line with the line of Pennsylvania Avenue, and from the boundary indicated by said pencil line, except that consent had been given for Mr. Parks to vary the said boundary line at one point so as not to exclude certain shade trees from the portion of the Hannis property which he was acquiring, but said

change on account of the shade trees is not affected by this litigation.

Mr. Parks' position is that the pencil line made by him on the blue print was not intended to be exact and definite, but was proximate merely; that plaintiff's letter of purchase of April 1, 1919, addressed to Alex. B. Parks and Company was for the benefit of the Hannis Company and not for him; that he had not then come personally into the equasion but that he later did become personally interested primarily for the purpose of assisting his son in negotiating the sale, it appearing that the Hannis Company would not sell to plaintiff the portion desired by it and retain the residue, and that he thereupon agreed to purchase the residue; that he told one or more representatives of the plaintiff (certainly Armstrong) that he would not interest himself in the purchase of the residue unless he could have a driveway entrance at the location which has now become the seat of this controversy; that the departure from the corner and boundary indicated by the pencil line which he had placed on the blue print was made by him with full knowledge of plaintiff's representatives, and that the corners as established were clearly marked by physical monuments on the ground and that the same were inspected by Armstrong and some of his associates.

This case involves no new question of law. It is elementary that a court of chancery may reform a deed or other written instrument where there is mistake on the part of the moving party and fraud or inequitable conduct of the other. "Where, however, the instrument does not express the true intent of the parteis, owing to mistake on one side coupled with fraud or inequitable conduct on the other, relief will be freely given. The ground of the jurisdiction in this case is the fraud of the defendant, rather than the mere mistake of the plaintiff." Pomeroy's Eq. Juris., Vol. 5, sec. 2097. This principle has been frequently recognized and applied by this Court in upholding reformation of various kinds of written instruments. Typical among the cases are *Moody* v. *Smoot Adv. Co.,* 98 W. Va. 261, and *White* v. *Kelley,* 85 W. Va. 366. But wherever fraud is relied upon as basis for relief, it must be clearly, distinctly and fully proved. *McDonald* v. *County*

*Court,* 94 W. Va. 773. This must necessarily be true whether fraud is the sole or partial basis for relief. And where a suit for reformation of a written instrument is based on mistake of the plaintiff and fraud of the defendant, relief will not be granted the plaintiff unless the defendant's fraud be clearly and fully proved, though the mistake of the plaintiff be established. The two elements must concur.

We are confronted here primarily with an issue of fact on which the trial chancellor has made a finding as the basis of his decree. Such finding, of course, will not be reversed on a review of the case unless contrary to a plain preponderance of the evidence. *Kincaid* v. *Evans,* 106 W. Va. 605, and cases cited. Can we say from this record that the chancellor was plainly wrong? We think not. This would be true even if the case stood on verbal testimony alone, involving, as it does, in many instances, irreconcilable conflicts as to conversations and actions incident to the transaction between the parties. But the case by no means stands on disputed verbal testimony. The paper evidence is conspicuous in support and justification of the learned chancellor's decree. We shall not recite the contradictions of the verbal testimony, but shall direct attention merely to what we consider outstanding features of the written evidence and undisputed verbal testimony.

That the pencil line placed on a blue print by Alexander Parks was not, in the first instance, considered to be of the definite, exact and binding nature sought to be attributed to it in this suit seems probable from these facts: Armstrong soon after receiving the blue print, sent the same with the pencil line thereon, to the office of the Pennsylvania Railroad Company at Chambersburg, Pa., for the purpose of having preliminary determination made with reference to a proposed additional railroad siding. Draftsmen in the office of a railroad company then prepared from this blue print a plat or map for their own purposes and carried onto it a line like the one that had been placed on the original blue print by Mr. Parks. Photostatic copies of the print were made in the engineer's office of the railroad company, and one of these copies was sent to Armstrong and he in turn sent it to Alex-

ander Parks. This copy clearly showed the division line as it had been placed on the blue print by Alexander Parks, but in addition thereto, this line had been labeled in conspicuous letters "Approx. N. F. P. Co. Prop. Line." In sending this copy to Mr. Parks, Mr. Armstrong wrote him a letter under date of May 7, 1929, but the fact that the line to which the plaintiff now seeks to attach controlling importance had then been labeled as only approximate was not adverted to. The inference is that there was then no objection to considering the line as approximate and not exact.

Each of the five plats aforesaid, made by Sparrow and Van Metre, respectively, shows the disputed lines and corners as contended for by Parks. These plats were at all times available to plaintiff's representatives. In fact, they had copies thereof in their possession. And, in addition, the corners as claimed by Parks were plainly marked monuments in open view of all persons alike. These were checked by the engineer employed by plaintiff after the surveys had been made by Parks' engineer. Of the two contracts dated June 9th (executed later) between Armstrong and his associates on the one hand and Alexander Parks on the other, the one pertaining to the tract of 5.43 A. contains the description as to disputed metes and bounds as now contended for by Parks, and each of the said two contracts contains a provision that the contract is conditioned not only upon the full consummation and conclusion of the agreement between Hannis Distilling Company and Alexander Parks whereby the latter was to become the intermediary owner of the property involved, but also of approval of title and verification of boundaries by the vendees. The first of the said two contracts refers to the Sparrow plats of May 1st and June 11th. In the deed of Alexander Parks to Armstrong and associates the property is bounded and described "according to a survey made thereof by T. W. Sparrow, engineer, dated August 16th, 1919, as follows:—" Then follows the Sparrow description in detail employing the courses and distances now contended for by Parks, and not only the plat but the two aforesaid contracts of June the 9th are made parts of the deed, "so far as not in conflict with the terms of this deed." And

there is this further significant provision in the deed: "* * * the courses and distances above set forth and as shown on said plat shall constitute the true metes and bounds of the real estate hereby conveyed anything in the description thereof in said agreements to the contrary notwithstanding."

On behalf of the plaintiff emphasis is laid on certain statements in a letter of Alexander Parks to the plaintiff under date of June 12, 1919. In the course of that letter Mr. Parks wrote: "When the description and map of the area that is bounded by the lines of your purchase from the Hannis Distilling Company (in which a slight correction has been made, so that the shade trees in the main office yard will be within the lines of my portion of the property) and the eastern line of the proposed new railroad connection has been prepared by the engineer, I will prepare the two contracts, covering your purchase from the Hannis Distilling Company and your purchase from me and forward them to you for execution. In the contract covering your purchase from me I will agree to convey to you the tract included between the lines of your purchase from the Hannis Distilling Company (with the correction above referred to) and the eastern line of your proposed new railroad connection, excepting * * *" etc. It is said that this language was calculated to mislead the plaintiff's representatives by giving the impression that there were to be no changes in the description as indicated by the pencil line made on the blue print by Mr. Parks, other than with reference to certain shade trees. We do not undertake to justify this language of Mr. Parks. However, it is not entirely plain just what he meant, particularly in the light of a preceding paragraph of the same letter wherein he says: "I bring to your attention, however, the fact that your purchase from me is a separate transaction, and has no connection with your original purchase from the Hannis Distilling Company." While the first above quoted portion of the letter might be considered as tending to support the plaintiff's position, it becomes, in our opinion, submerged in the facts and circumstances which show that the variation from the original corner and boundary was made so openly

and conspicuously as to refute the idea of deception. And, again, the mere fact that some phase of a man's conduct may not be entirely clear does not convict him of fraud. To establish fraud the proof must be strong and convincing. "The law does not presume fraud, but on the contrary the presumption is always in favor of innocence and not of guilt, and unless the allegations of fraud are proven, relief will be denied, although it may appear that the defendant has not been perfectly clear in his dealings." 6 Encyc. Dig. Va. & W. Va. Rep. p. 502, and cases cited.

Granting that Mr. Armstrong and his associates did not comprehend that the corner and boundary indicated in the first instance by Alexander Parks by pencil line on a blue print were being departed from in all later steps of the dealings between the parties, and that Armstrong and associates failed to grasp the significance of the monuments on the ground, the corners and lines as portrayed on the several plats, and the corners and distances in the written contracts and in the two deeds, one executed by Parks to them and the other by themselves to the plaintiff, we can reach no other conclusion than that their misapprehension of the situation must be attributed solely to the occupancy and engrossment of their minds with other important details of the transaction and other business responsibilities, and not to any advantage taken of them by Mr. Parks. In the light of the physical monuments, the plats, the contracts and the deeds, all openly proclaiming the corners and lines as contended for in this controversy by Alexander Parks, we are unable to perceive how, on this record, it can properly be said that he caused the plaintiff's representatives to be misled, thereby subjecting himself to conviction of fraud or inequitable conduct.

We, therefore, affirm the decree of the trial court.

*Affirmed.*