GERTRUDE LUSHER, *et al.*

*v.*

BERNELL SPARKS, *et al.*

(No. 12092)

Submitted September 12, 1961. Decided November 21, 1961.

796

BERRY, JUDGE, not participating

E. *Oldham Berry, Henry McLane,* the appellants.

*Brooks B. Callaghan,* for appellees.

CALHOUN, JUDGE:

Gertrude Lusher and Central Petroleum Company, Inc., a corporation, (sometimes referred to herein as Central Petroleum), instituted the chancery suit herein involved in the Circuit Court of Nicholas County on September 24, 1959, against Bernell Sparks, Freda Smallwood Sparks and Clara Sparks to require the reformation of a certain deed dated June 25, 1959, by which Bernell Sparks and Freda Smallwood Sparks, husband and wife, conveyed to Central Petroleum Company, Inc., certain real estate situated in Hamilton District of Nicholas County, being the same tract of land which had been conveyed previously to Bernell Sparks and Freda Smallwood Sparks, as joint tenants with rights of survivorship, by O. Ray Sparks and wife, parents of Bernell Sparks, by deed dated March 12, 1957. Gertrude Lusher is a party plaintiff in the suit by reason of the fact that the same real estate was conveyed to her subsequently by Central Petroleum Company, Inc., by deed dated August 7, 1959. The plaintiffs prosecute this appeal from a final decree entered by the circuit court on May 27, 1960, by which the prayer of the bill of complaint was denied, and judgment was entered for the defendants.

On the plat filed as an exhibit and in the deed to Bernell Sparks and Freda Smallwood Sparks, the real estate in question is described as a tract of 2.08 acres, whereas in the deed to Central Petroleum and in the deed to Gertrude Lusher it is described as a tract of 2.8 acres. The description by metes and bounds, nevertheless, is identical in all of such three deeds.

Bernell Sparks and Freda Smallwood Sparks constructed a dwelling on the real estate prior to the time they obtained a conveyance of title thereto. After the conveyance of title to them, they constructed on the same tract a building for use as a gasoline service station and grocery store. The building is 66.2 feet in length, fronting on and parallel to State Route 43. The northern line of the 2.08-acre tract, described on

the plat as line 4-5, is the line in controversy in this case. It intersects the service station building in a diagonal manner, without regard to rooms or partitions therein. The result is that there is excluded from the conveyance to Central Petroleum Company, Inc., and from the conveyance to Gertrude Lusher, a portion of the building which is 23.2 feet in length at the front and 35.8 feet in length at the rear thereof. There is likewise excluded from such two conveyances a considerable portion of the land used as a driveway or approach to the building and to the gasoline pumps, as well as the land beneath the surface of which three underground gasoline storage tanks are buried to service the gasoline pumps.

B. E. Chenoweth, president, manager and principal owner of the plaintiff corporation, testified that, with the northerly line thus intersecting the building, "you don't have room to service your automobile; you couldn't get them in to your pumps; completely blocked you from entering your washroom and lubrication bay, and it was — as far as I am concerned it wouldn't be worth paying the taxes on it." That the usefulness of the building as a service station or for other business purposes under such circumstances would be seriously impaired is a fact which is obvious and not denied.

The land lying immediately northward from line 4-5 is a tract of 3.12 acres, which was formerly owned by O. Ray Sparks, and on his death intestate on or about October 21, 1957, it passed by descent to his son, Bernell Sparks, subject to the dower rights of his widow, Clara Sparks. Clara Sparks lives in a dwelling situated on such tract of 3.12 acres, a short distance northward from the service station. The land which the plaintiffs seek to acquire by reformation of the deed, .78 acre in area, is, therefore, now owned by Bernell Sparks, subject to the inchoate dower rights of his wife, Freda Smallwood Sparks, and subject to the consummate but unassigned dower rights of his mother, Clara Sparks.

Prior to the making and execution of the deed from O. Ray Sparks and wife to Bernell Sparks and Freda Smallwood Sparks, the tract of 2.08 acres thereby conveyed was surveyed by Leonard Nunley. The metes and bounds included in the three deeds herein referred to originated with that survey. When the survey was made, an iron pipe was driven in the ground to mark the northeastern corner of the tract, at a point adjacent to the right of way of State Route 43. This point is referred to on the plat and in the testimony as point 5. In connection with the construction of the service station, this area was covered by a fill, so that the iron pipe was not visible at the time of the sale and conveyance to Central Petroleum.

Central Petroleum Company, Inc., with offices at Sutton, West Virginia, is a distributor of Gulf Oil Corporation products in Braxton County and in a portion of Nicholas County. K. O. Pierce of Charleston, West Virginia, a representative of Gulf Oil Corporation, before the construction of the service station was completed, commenced negotiations with Bernell Sparks, which culminated in a written "sales agreement" executed on October 23, 1958, by which Bernell Sparks contracted to sell Gulf products at the service station. As a witness for the plaintiffs, K. O. Pierce testified that, in connection with negotiations leading to the execution of the sales agreement, Bernell Sparks pointed out to him on the premises the northerly boundary line and the northeast corner of his property; that he and Sparks walked northward along Route 43 to a certain fence, which commenced near the highway and extended westward toward the rear of the property, apparently at approximately a 90° angle in relation to the highway. Pierce testified that the point near the highway thus pointed out by Sparks as the northeast corner of the property was, according to the witness's estimate, 30 to 40 feet northward from the northern edge of the service station building. That point is designated on the plat and referred to in the testimony as point 6. In other words, the defendants

claim that the proper location of the northeast corner is at point 5, while the plaintiffs contend that the deed should be reformed so as to locate the northeast corner at point 6. The distance between the two points is 41.4 feet. In connection with the making of the sales agreement, Sparks designated the location for the installation of the three underground storage tanks.

W. B. Butcher, secretary and treasurer of the plaintiff corporation, testified that, in connection with the purchase of the property by the plaintiff corporation, he went with B. E. Chenoweth to the premises, and on that occasion Bernell Sparks designated a point "around 30 to 40 feet from the filling station", near the edge of Clara Sparks' lawn, as the northeast corner of the property. He testified further that such point was at a fence, or at least where a fence had been located previously.

B. E. Chenoweth testified that, while the service station building was only partially constructed, Central Petroleum, in behalf of Gulf Oil Corporation, installed the three underground storage tanks of 2000-gallon capacity each, and that each of the three defendants was present during that period; that Bernell Sparks designated the place for installation of the tanks; that Sparks then stated that "he owned it down to that fence and he could go on farther if necessary, for his mother owned that"; that the service station was in operation only three or four months; that upon being advised that the service station had ceased operation, he went to the premises on June 19; that negotiations then commenced, culminating in the deed of conveyance herein involved, based on a consideration of $14,000; and that meantime the witness believed that the northeast corner of the property was "at the corner of the fence", as previously indicated by Bernell Sparks.

A short time before the making and execution of the deed to Central Petroleum, B. E. Chenoweth went with his attorney, E. Oldham Berry, to the courthouse at Summersville, the county seat of Nicholas County, to

check the title to the real estate in question. On their return, they stopped at the service station. Chenoweth testified that on that occasion, Bernell Sparks walked with Berry to the fence and said, "Right here is approximately the corner." He testified further that Sparks then and there stated that the northern line of the property "run just south of the woodshed and the coal shed, and run north of a wild cherry tree, up against the hill a distance." The witness testified that Freda Smallwood Sparks was present meantime, and voiced no protest or dissent.

On August 17, 1959, B. E. Chenoweth received word from certain of his employees that Clara Sparks questioned their authority to dig a ditch north of the service station in an area which he believed had been conveyed to Central Petroleum by the deed in question in this case. Within a day or so thereafter, Chenoweth took H. B. McNary, a surveyor, to the premises in order to have McNary survey the lines according to the metes and bounds description contained in the deed to Central Petroleum. They then discovered that the northern line of the tract bisected the building as stated earlier herein. About two weeks later McNary, at the request of Chenoweth, went to the premises with Attorney Berry, and surveyed the northern line of the tract by beginning at a point and following a course designated by Berry. While en route to the premises, McNary and Berry, traveling in the latter's automobile, went to Craigsville for the purpose of seeing Bernell Sparks. At that place, Sparks got into the automobile and a heated exchange of words ensued between Berry and Sparks. McNary testified that Sparks on that occasion stated that "he had Mr. Chenoweth over a barrel", and that he intended to collect "$2500 for the additional property"; and that Sparks repeated similar statements in his presence later that day in the home of Clara Sparks.

E. Oldham Berry, an attorney at Sutton, West Virginia, testified that, accompanied by Chenoweth, he went to Summersville to check the title to the tract of

2.08 acres and returned by way of the premises where pertinent matters were discussed with Bernell Sparks; that they "went over virtually the entire front part of the property, including the service station and adjacent property, with Mr. Sparks."; that "Mrs. Sparks was there for fifty percent of the time * * * and the matter was discussed with both of them"; and that Bernell Sparks "walked to a point south of the old fence that was there, between the fence and the paved portion of the highway, and stood there and said, 'This is the corner here.'" Berry testified that Sparks then indicated the course of the line from that point in relation to the woodhouse and a wild cherry tree, "approximately halfway between the cherry tree and the woodhouse"; and also in relation to the exposed "vent-cap" or "filler-pipe" of the most northerly of the three underground storage tanks. He testified that Freda Smallwood Sparks was present when such conversation occurred; that "we were all four there together"; and that she registered no objection. Berry testified further as follows: "I said something to Mr. Sparks in regard to the necessity of having the property surveyed, stating that I could tell from the calls in the deed from his father to him that they were of recent vintage, and his answer was that there was no need to have it surveyed, that it had just been surveyed a couple of years before when the property had been conveyed to him; and I asked him if the corners that he had shown me were the corners of that survey and he replied that they were, that he was present when the survey was made and helped in putting the stakes in, and said that the stake at the particular corner, the northeast corner, was there but some three or four feet down underneath the surface of the ground; that there had been a fill made to enable the cars to enter the front of the service station." Berry testified further: " * * * I made the comment that the line passed over very close to the filler-pipe of the third tank from the service station; and also told Mr. Chenoweth that he was not getting clear to the end of the tanks, that the northern end of one tank was being excluded in this deal and, of

course, asked him if it was all right, and Mr. Chenoweth said yes.'' He also testified that in his automobile at Craigsville, Bernell Sparks stated that ''now that he had Mr. Chenoweth over a barrel that he was going to keep him there and it was going to cost him $2500 for an easement over his property * * *.'' Berry testified that he pointed out to McNary the northern line of the property in question as it had been described to him by Bernell Sparks in the presence of Freda Smallwood Sparks, and that McNary made his second survey accordingly.

There is a sharp conflict in the testimony in relation to the question whether the old fence north of the service station had been removed prior to the time of the sale and conveyance to Central Petroleum; and also in relation to the question whether there was at that time a driveway crossing the disputed area of .78 acre from Route 43 and leading to the home of Clara Sparks.

Bernell Sparks testified that Chenoweth knew of the location of the iron pipe at the northeast corner of the property covered by the fill, but that the matter was not discussed during the negotiations leading to the sale and conveyance, except that, when the three underground storage tanks were installed, he told Chenoweth that the land at that point belonged to his mother. He testified that on the occasion when Berry and Chenoweth came from Summersville to the premises prior to the making of the deed, they were in the ''store part'' of the building, not outside, and he denies having pointed out the northeast corner or the northern line of the tract to Berry or Chenoweth at any time.

Clara Sparks testified that she knew the exact location of the northeast corner and of the northern line of the 2.08-acre tract; that her son sought and obtained her permission to locate the storage tanks and a portion of the building beyond the northern line of that tract; that she is making no claim to the land on which the building stands; that her son did not consult her about the sale of the 2.08-acre tract; that on the occasion when

Berry and Chenoweth were on the premises, prior to the date of the deed, she was working among her flowers near where the old fence formerly stood; that her son did not on that occasion bring Berry to a point nearby, and did not point out the northeast corner or the northern line; and that on June 25, the date of the deed, her son told her he had sold the property.

Freda Smallwood Sparks testified that she was not present during any of the negotiations leading to the sale and conveyance, though she knew of such negotiations; that she "left it all up to him", meaning her husband; that she was not present when any corners or lines of the property were pointed out to Berry or Chenoweth by her husband; that she was quite willing for her husband to negotiate the sale; that she "just left it entirely up to him", to do in her behalf "whatever needed to be done"; and that meantime she knew of the fact that the service station building was located only partially on the land being sold and conveyed to Central Petroleum.

During the course of the taking of testimony at the bar of the court, the defendants voluntarily agreed to relinquish all their rights to the land on which the building stands, as well as the land between the building and the highway. In compliance therewith, the court, in its final decree, directed the defendants to execute a proper deed conveying such land to Gertrude Lusher.

The deed to Central Petroleum conveys the tract in question "together with the buildings thereon and the appurtenances thereto belonging," including "all of the various items of personal property located in the buildings on the real estate herein conveyed and all the stock of goods, wares, merchandise, inventory, furniture, fixtures, appliances, tools and good will of every kind, character, sort and description, used in, or connected therewith, the business formerly conducted by the said Grantors of a grocery store and service station * * *." The deed contains the following addi-

tional language: "It is agreed and understood by and between the parties hereto that the said Grantee is to have immediate possession of the service station premises located on the real estate * * *."

Two opinions in writing, filed and made a part of the record, may be considered by this Court in determining the ground or grounds upon which the trial court based its judgment. *Rollins v. Daraban,* 145 W. Va. 178, pt. 2 syl., 113 S. E. 2d 369. In the first of these two opinions the trial court stated: "The respondents, Bernell Sparks and Freda Smallwood Sparks, could not have, at the time the deed was executed, nor can they at this time, grant clear title to that part of the real estate in dispute. Therefore, a reformation of their deed required by this Court being impossible of performance by them is beyond the powers of the Court to require, * * *." In the second and final opinion the court stated: "But the principal ground upon which I have denied the relief in the instant case is not upon the degree of proof required but based upon the powerlessness of the Court to require a reformation." It appears, therefore, that the trial court's final judgment was based, primarily at least, on legal grounds, rather than upon insufficiency of proof. It is well settled that findings of fact made by a trial chancellor, or by a trial court sitting in lieu of a jury, based on testimony heard *ore tenus,* should not be reversed by this Court unless such findings are contrary to the preponderance of the evidence or clearly wrong. *Lieberman v. Lieberman,* 142 W. Va. 716, 98 S. E. 2d 275; *The Committee, etc. v. Pietranton,* 143 W. Va. 11, 99 S. E. 2d 15. Such rule of law does not apply to the present case, however, to the extent that the trial court's findings and judgment were based on a legal proposition as distinguished from a finding of fact.

"The jurisdiction of equity to reform written instruments, where there is a mutual mistake or *mistake on one side and fraud or inequitable conduct on the other,* if the evidence be sufficiently cogent to

thoroughly satisfy the mind of the Court, is fully established and undoubted." (Italics supplied.) *Nutter v. Brown, etc.*, 51 W. Va. 598, pt. 2 syl., 42 S. E. 661. To the same effect see *Dyke v. Alleman*, 130 W. Va. 519, pt. 2 syl., 44 S. E. 2d 587; *National Fruit Product Co. v. Parks et al.*, 108 W. Va. 321, pt. 1 syl., 150 S. E. 749; *Moody v. Smoot Advertising Co.*, 98 W. Va. 261, syl., 126 S. E. 919; *White v. Kelly*, 85 W. Va. 366, pt. 1 syl., 101 S. E. 724; *Connecticut Fire Insurance Co. v. Oakley Improved Building & Loan Co.*, 80 F. 2d 717; *Bankers Fire Insurance Co. v. Henderson et al.*, 196 Va. 195, 83 S. E. 2d 424. "In order to authorize reformation, the instrument must fail to express the parties' agreement or intention, either because of mutual mistake or because of *mistake, inadvertence, or accident on one side and fraud or inequitable conduct on the other.*" (Italics supplied) 76 C. J. S., Reformation of Instruments, Section 30, page 374. See also 45 Am. Jur., Reformation of Instruments, Section 62, page 621. To warrant such reformation, the proof must be "strong, clear and convincing." *Johnston v. Terry*, 128 W. Va. 94, pt. 4 syl., 36 S. E. 2d 489; *Edmiston v. Wilson*, 146 W. Va. 511, pt. 5 syl., 120 S. E. 2d 491.

While there is no presumption of law that the husband has power to act as agent in behalf of the wife merely by virtue of the marital relationship, the wife may, nevertheless, constitute the husband as her agent to act in her behalf. *Highland v. Ice*, 75 W. Va. 513, pt. 1 syl., 84 S. E. 252; *Trapnell et al v. Conklyn et al.*, 37 W. Va. 242, pt. 5 syl., 16 S. E. 570; *Camden & Co. v. Hiteshew*, 23 W. Va. 236, pt. 2 syl.; *Miller v. Peck*, 18 W. Va. 75. A married woman may bind herself by ratification of the unauthorized acts of her husband acting in her behalf. 41 C. J. S., Husband and Wife, Section 69, page 546, and Section 297, page 781; 26 Am. Jur., Husband and Wife, Section 229, page 840. The wife may by her actions or conduct be estopped to deny her husband's authority to act as agent in her behalf. 41 C. J. S., Husband and Wife, Section 296, page 781. In applying the principles of agency to the hus-

band and wife relationship, this Court in the second, third and fourth points of the syllabus in the case of *Watring v. Gibson,* 84 W. Va. 204, 100 S. E. 68, stated:

> "A principal is bound by representations as to existing fact, made by his agent, in regard to a transaction entrusted to him; and this rule applies to the transactions of an agent for a married woman, respecting those matters concerning which married women are permitted by law to contract.

> "The marital relation does not prevent a husband from acting as agent for his wife, and when she permits him to act as her agent in negotiating a sale of her separate real estate and afterwards signs and acknowledges a written contract in pursuance thereof, in the execution of which he joins, and she receives the consideration therefor, she is bound by the fraudulent representations of her agent respecting the acreage and is liable to account to the purchaser for the shortage.

> "Where a married woman receives the consideration which a purchaser of her property has been induced to pay, in reliance upon the fraudulent representations of her agent, equity will not permit her to retain the benefits thereof and repudiate the liability arising out of such fraudulent representations of her agent, even though she did not authorize the agent to make them."

By her express admission as a witness, it appears that Freda Smallwood Sparks clothed her husband with full authority to act as agent in her behalf in making sale of the real estate. She did not repudiate the contract made in her behalf but, on the contrary, she ratified and affirmed it to the extent of executing the deed and joining with her husband in acceptance of the consideration. Under such circumstances she is estopped to deny his authority, and she is bound by representations made by her husband relative to the land to be included in the contract and conveyance. *Watring v Gibson,* 84 W. Va. 204, 100 S. E. 68. In such circumstances, it becomes a matter of only minor significance that she was or was not present when such representations were made by her husband.

It is fundamental that the weight of evidence may not be determined merely on the basis of the number of witnesses. *State v. Williams*, 95 W. Va. 218, pt. 4 syl., 120 S. E. 594; *Crowl v. Buckhannon and Northern Railroad Co.*, 92 W. Va. 188, pt. 4 syl., 114 S. E. 521. "By a preponderance of evidence is not meant necessarily a preponderance in number of witnesses, but * * * evidence of greater weight, the applicable maxim in ascertaining the preponderance of evidence being testes ponderantur non numerantur, that is, that witnesses are not to be counted, but their testimony is to be weighed * * *. However, disparity in number of witnesses is a circumstance not to be overlooked, it being a circumstance to be considered by the trier of facts * * *." 32 C. J. S., Evidence, Section 1022, pages 1055-57. K. O. Pierce, W. B. Butcher, B. E. Chenoweth and E. Oldham Berry all testified, in substance, that, on different occasions and in various circumstances, Bernell Sparks designated a point approximately at the old fence as the northeast corner of his tract of 2.08 acres. Bernell Sparks' denial of such testimony is vague, evasive and unconvincing. He did not testify, however, that it was ever at any time specifically called to the attention of B. E. Chenoweth or any of his agents or representatives that the lines of the tract of 2.08 acres do not embrace a portion of the service station building and a portion of the land necessary to the proper and ordinary use and enjoyment of the service station. Impliedly, though perhaps not expressly, Bernell Sparks testified that B. E. Chenoweth knew of the actual location of the northern line and the northeast corner of the 2.08 acres and that he, having such knowledge, on behalf of Central Petroleum, consciously and deliberately bought and paid for the property under such circumstances for use as a service station. Such position of Bernell Sparks implies a high degree of gullibility on the part of B. E. Chenoweth, apparently an experienced business man; as well as a great credulity on the part of the trier of fact in the case. Testimony, even though uncontradicted, need not be accepted by the trier of fact if it is "opposed to

common knowledge or human experience, inherently improbable, unreasonable or unworthy of belief''. 32 C. J. S., Evidence, Section 1038, page 1096. See also 58 Am. Jur., Witnesses, Section 864, page 492; *Webb v. Harrison,* 127 W. Va. 124, 130-31, 31 S. E. 2d 686, 689; *Napper v. Rice,* 127 W. Va. 157, pt. 1 syl., 32 S. E. 2d 41; *Watson v. Burley,* 105 W. Va. 416, pt. 1 syl., 143 S. E. 95. ''The courts are not required to believe that which they judicially know to be incredible, and testimony may be so improbable, when tested by rules which govern men of ordinary capacity and intelligence in a given business transaction, that a court may refuse to credit it.'' 98 C. J. S., Witnesses, Section 468, page 341. Courts are not required to believe that which is contrary to human experience and the laws of nature, or which they judicially know to be incredible. *State v. Johnson,* 142 W. Va. 284, 288, 95 S. E. 2d 409, 413; *Raines v. Faulkner,* 131 W. Va. 10, 17, 48 S. E. 2d 393, 398; *Browning v. Monongahela Transport Co.,* 126 W. Va. 195, 201, 27 S. E. 2d 481, 484; *Acree v. The Eureka Pipe Line Co.,* 122 W. Va. 242, 246, 8 S. E. 2d 186, 188; *Owen v. Appalachian Power Co.,* 78 W. Va. 596, 610, 89 S. E. 262, 268; *Smith v. New Dixie Lines,* 201 Va. 466, 111 S. E. 2d 434.

The Court holds that the testimony is sufficiently strong, clear and convincing to require a reformation of the deed in accordance with the allegations and prayer of the bill of complaint, so far as Bernell Sparks and Freda Smallwood Sparks are concerned. We hold further that relief against Clara Sparks, in relation to her dower in the .78-acre tract, can not be obtained in this proceeding, because of the fact that she was not a party to the deed or to the contract embodied therein, and a mere reformation of the deed would not relate to her dower rights in the real estate in question. The Court can not add parties or substitute other parties for those appearing on the face of the deed, since the effect thereof would be to make a new or different contract. 76 C. J. S., Reformation of Instruments, Section 41, page 386, and Section 5, page 330; 53 C. J.,

Reformation of Instruments, Section 81, page 957 ; 45 Am. Jur., Reformation of Instruments, Section 35, page 602. Normally reformation may be allowed only against the original parties to the writing and those in privity with them. 45 Am. Jur., Reformation of Instruments, Section 66, page 623, 76 C. J. S., Reformation of Instruments, Section 54, page 405.

For reasons stated herein, the judgment of the Circuit Court of Nicholas County is affirmed in part, reversed in part, and the case is remanded to that court for such further proceedings consonant with this opinion as may be indicated.

*Affirmed in part;*
*reversed in part;*
*remanded with directions.*